Moncure, P.
delivered the opinion of the court.
There are three assignments of error in this case, which I will notice in their order; and
First, “that it was error to render any decree in the case at a special term of the court without the consent of parties.”
The Code, ch. 158, § S3, among other things,'.provides that “ at any special term, any civil cause may be tried which could lawfully have been, but was not, tried at the last preceding term that was, or should have been, held; and any motion cognizable by such court may be heard and determined, whether it-was pending at the preceding term or not,” &c. “And any cause or matter of controversy in chancery then ready for |hearing may be heard and determined, with the consent of the parties *446 to such cause or controversy, although it could not lawfully have been heard at the next preceding term that was, or should have been, held.”
The decree complained of in this case was rendered at a special term of the Circuit court of Bland county, on the 17th day of December 1869. The cause was not then heard “with the consent of the parties” thereto. But it “could lawfully have been, but was not, tried at the last preceding term that was, or should have been, held.” By an act passed February 23, 1867, Acts of Assembly 1866-7, p. 668, chap. 234, § 2, it was declared that the Circuit court of Bland county should be held on the Wednesday after the third Monday in May and October. This act, it seems, so far as it fixed the time for holding the said court, continued in force until and after the said decree of the 17th day of December 1869, was rendered. Therefore, a regular term of the said court was, or should have been, held on the Wednesday after the third Monday in October 1869, which was the last term that was, or should have been, held preceding the said special term at which the said decree was rendered. It appears that this cause could lawfully have been, but was not, tried at the said term of the said court that was, or should have been, held on the third Wednesday after the third Monday in October 1869, as aforesaid. The subpoena was issued on the 16th day of February 1869, returnable on the first Monday in March next thereafter. The bill was filed at April rules next thereafter. There were but two defendants in the case, James E. Young and Russell Patton, the former of whom was a non-resident of the State. It appears that the process was duly executed on the home defendant, and that the non-resident defendant was duly proceeded against by publication. The home defendant appeared at a special term of the said court on the 26th day of July 1869, and filed his answer, to which the plaintiff replied generally, and the cause was then continued. *447 There is no copy of the order of publication in the record, which is very meagre. But the said decree of the 17th of December 1869, recites that there had been due proceedings against the non-resident defendant by publication according to law. The presumption is, that the proceedings in the case were regular, and that the publication was completed in full time for the case to have been tried at the last preceding term that was, or should have been, held as aforesaid. Consequently, it was not error to render a decree in the case at the said special term of the court on the 17th of December 1869.
The next assignment of error is more substantial, and is the one mainly l’elied on in the case, viz:
Second, “It was error to render a decree for the sale of two-thirds of said tan-yard property, instead of the one-third conveyed by Zimmerman, upon which the lien was reserved by the deed.”
Whether this was error or not, depends upon the true construction of the deed of the 9th day of October 1865, exhibited with the bill, whereby George H. Williams and wife and William Zimmerman and wife conveyed their interest in the said tan-yard property to the said James E. Young.
It is now, as it always has been, perfectly competent for a vendor expressly to reserve on the face of the conveyance a lien on the property conveyed, or any part thereof, for the purchase money remaining unpaid, or any part thereof. Formerly he had an implied lien on the property for the purchase money remaining unpaid, though he conveyed the property to the purchaser without reserving a lien thereon in the conveyance, and without taking a mortgage or deed of trust on the property, unless the implication was repelled by circumstances showing an intention on the part of the vendor not to retain such a lien. The taking of a mortgage or deed of trust, or other security, for the purchase money was held sufficient to repel the implication. This implied *448 lien was called the “vendors’ equity” or the “vendors’' lien,” and was good, not only against the vendee himself, hut also against purchasers from him with notice, and volunteers claiming under him. There were many inconveniences and uncertainties attending this implied lien, which induced the legislature to abolish it, in the Code of 1849 ; it being declared in the first section of chapter 119 of that Code, that “if any person hereafter convey any real estate, and the purchase money, or any part thereof, remain unpaid at the time of the conveyance, he shall not thereby have a lien for such unpaid purchase money, unless such lien is expressly reserved on the face of the conveyance.”
TMb provision, it is thus seen, leaves unaffected a lien “ expressly reserved on the face of the conveyance,” which lien continues to have the same force and effect it always had. The reason of this is obvious. None of the evils growing out of the vendor’s implied lien resulted from a lien expressly reserved on the face of the-conveyance. Being set forth in the very first link of the vendee’s chain of title, purchasers from him had. just as much notice of it as they would have had of eu lien upon the land by deed of trust or mortgage.
The question then is, What is the true construction of the deed? Did the grantors thereby retain a lien on> the whole of the property conveyed, or only one-half of it, as a security for the payment of the purchase money-remaining unpaid? They had, undoubtedly, a perfect right to retain a lien on the whole or the half of said property, according to their pleasure, even though that part of the purchase money remaining unpaid may have-been due and payable only to one of the vendors. Then-which of these two things did they intend to do? The-deed itself must answer that question, and we think it does plainly answer it. There cannot be a doubt about it, if we look only to the words by which the lien is retained, and that certainly is the most material part of- *449 the deed to be looked to in making the present enquiry. Those words are: “And the said William Zimmerman. and Sallie B. his wife, do hereby retain a lien on the property hereby conveyed, as secuiity for the payment of the above receipted notes received in payment of their interest; the said George H. Williams has been paid up in full for his interest.” The lien is thus retained on the property conveyed by the deed—that is, the whole property, and not half the property thereby conveyed, or the interest which belonged to Zimmerman in that property. If that had been the intention, it would, as it easily could, have been plainly so expressed. The intention to retain a lien on the whole property being thus plainly expressed, if a different intention can be shown by the context, it ought to be very plainly shown to counteract the natural import of the words by which the lien is retained. How let us look at the context and see how they affect the meaning of those words.
The deed is between George H. Williams and Martha E. his wife, and William Zimmerman and Sallie E. his wife, of the first part, and James E. Young of the other part; and the grantors, “for and in consideration of $450 paid to the said George H. Williams, the receipt . whereof is hereby acknowledged, and also in consideration of three several notes this day executed by the said James E. Young to the said William Zimmerman, as follows: one note for $100, payable on the 1st day of January 1866, one other note for $200, payable on the 1st day of January 1867, both of said notes bearing interest from date, and also a third note for four hundred dollars, payable on the 1st day of January 1868, without interest, the receipt of which several three notes to Zimmerman is hereby acknowledged; and the further sum of one dollar cash in hand paid by said Young to said Williams and Zimmerman,” &c., “grant, bargain, sell and convey unto James E. Young their interest in a certain tract or parcel of land upon which there is a tan- *450 yard improvement, lying and being in Bland county, Va., containing about five acres, being the same land bought from Jame3 Boyd and wife by James E. Young, "William Zimmerman and Henry Williams, and the interest hereby conveyed is one-third of the said property owned by the said Williams, and one-third owned by the said Zimmerman, both of which also hereby convey all their interest in the stock in said yard, teams, tools, fixtures and property belonging to said tan-yard, also all debts owing to the partnership conveyed in said tan-yard due to said Young, Zimmerman and Williams, he, the said Young, paying all'debts due from and owing by said partnership.” The grantors then “warrant and defend the title to the said property hereby couveyed against the claims of themselves and their heirs, or any person claiming by, through or under them.”
We have thus recited substantially, and almost literally, the entire deed, and we see nothing in it which is inconsistent with the construction we have put upon the words by which the lien is retained. On the contrary, we think that construction is supported by the other parts of the deed. The three parties, the two grantors and the grantee, held the property not only as co-partners, but as joint-tenants also. “With respect to unity of possession, joint-tenants are said to be seized, per mi et per tout—that is, each of them has the entire possession as well of every part as of the whole. They have not, one of them a seizin of one-half, and the other of the remaining half; neither can one be exclusively seized of one acre and his companion of another; but each has an undivided moiety of the whole, not the whole of an undivided moiety. From which it follows that the possession and seizin of one joint-tenant is the possession and seizin of the other.” Thus is the law laid down in 1 Lom. Dig. p. 612, § 8, marg. p. 476. “A tenancy in common differs from a joint tenancy in this respect: joint-tenants have one estate in the whole and no estate *451 in any particular part; they have the power of alienation over their respective aliquot parts; and hy exercising that power may give a separate and distinct right to their particular parts. Tenants in common have several and distinct estates in their respective parts. Hence the difference in the several modes of assurance by them. Each tenant in common has, in contemplation of law, a distinct tenement, a distinct freehold.” Id. p. 641, § 1, marg. 498. A release, and not a feofment, is the proper form of conveyance by one joint-tenant to another. 'i(A feofment, and not a release, is the proper assurance between tenants in common.” Id. Though the common law right of survivorship in estates of joint tenancy has been abolished in Virginia by statute, yet many of the common law incidents of the estate still remain, and especially the entirety of possession of each tenant, as well of every part as of the whole. When, therefore, two of these three j oint-tenants conveyed, or rather released, their interest in the joint subject to the other, they released an interest which pervaded the whole subject, and the lien which was expressly retained on the property conveyed by the deed naturally and properly, as well as literally, bound the whole property conveyed, embracing the interest of both of the grantors. Suppose the three joint-tenants had joined in a conveyance of the whole property to a stranger, for a consideration payable to them all, and had expressly retained in the deed a lien on the property thereby conveyed for the security of the purchase money. Would not that lien have bound the whole property, and every part of it, for the payment of the whole consideration and every part of it ? Certainly it would. Suppose one of the three grantors had received in cash his third of the purchase money ; would not the same lien have existed in regard to the remaining two-thirds due to the other two grantors ? Certainly it would. What difference can it make that two of the joint-tenants release their interests to the *452 third, and retain a lien on the property released for the payment of that part of the purchase money not paid in hand, though it be due and payable to one only of the releasors ? What reason can there be for confining the lien to one-third only of the property, instead of extending it to the two-thirds conveyed? In this case, the whole consideration of the deed was $1,150, of which only $450 was paid to Williams, while the remainder, $700, was secured to Zimmerman. Why was this unequal division made of the purchase money, if they were-equally interested in the subject conveyed ? In law they were jointly and equally entitled; but in equity they may and must have been unequally entitled. The three had been partners, and we do not know what was the state of their accounts when the deed was made. It was such, however, between Williams and Zimmerman as that the latter was entitled to nearly two-thirds of the purchase money of their interests in the property. And if so, then in equity Zimmerman was entitled to nearly two-thirds of the property conveyed. We see in this a special reason for retaining a lien on the whole property conveyed for the payment of the purchase money due to Zimmerman. Then again, the subject conveyed embraced other property besides the tan-yard, and the purchaser, Young, was to pay off the debts of the concern. Those debts, for aught we know, may consume the whole assets of the concern, besides the tan-yard, and thus leave a subject for the operation of the lien in favor of Zimmerman not more than 'sufficient to discharge it. We see in this also a special reason for extending the said lien to the whole property conveyed.
Whether, therefore, we look only to the wordsjof the clause retaining the lien, or look also to the context of the deed, we think the lien is upon two-thirds of the tan-yard property; and therefore, there was no error in rendering a decree for the sale of two-thirds instead of one-third.
*453 The remaining assignment of error is—
“Third. It was error in enforcing i'any lien in favor ■of Williams, as he had made a full conveyance and failed ■expressly to reserve a lien.”
The question presented by this assignment of error has already been sufficiently answered, hlo lien in favor of Williams was enforced by the decree. The only lien thereby enforced was in favor of Zimmerman. 1
We think there is no error in the decree, and that it ought to be affirmed. But as there may be some uncertainty in regard to the property belonging to the tan-yard and now subject to the said lien, which might tend to produce a sacrifice at the sale made under the said decree, it is proper, if either party require it, that before such sale Í3 made, an account should be taken of the said property, and of the kind, nature and quantity thereof; and also, if either party so require, it is proper that before such sale is made, an account should be taken of the amount remaining due and unpaid of the debts secured by the said deed of the 9th day of October 1865. The said affirmance ought, therefore, to be with instructions to the court below to conform to the foregoing opinion in regard to the taking of the said accounts, if required as aforesaid, before sale is made under the said decree.
Bouldin, J. dissented.
Decree affirmed.