STAPLES, J.
These two cases were heard together in the court below, and the bill each case dismissed. A decision in one of them, however, will settle the main points of *419 controversy; 1. shall therefore coniine myself exclusively to the matters involved in that case. Preliminary, however, to the main question it is necessary to inquire what are the equities of the parties litigant — Miss Coles on the one hand, and Holland, the purchaser, on the other. The latter, in his answer, avers that at the time of his purchase he had no knowledge or suspicion of the lien, and that he never heard of it until several years after the close of the war. At what precise period he obtained this information he does not tell us. Upon this point he is vague and unsatisfactory. It is, however, not very material, because the lien of Miss Coles being secured on the face of the deed under which Holland claimed, constituted notice to him. That deed was matter of record, which he might have examined. It was gross negligence in him not to do so. The object of the statute in requiring the lien to be reserved on the face of the deed, was to make it matter of record, and thus furnish to all persons dealing with the property the necessary ^information of all liens and incumbrances thereon. Patton v. Hoge, 22 Gratt. 443. It is the duty of the party to examine the records, say the authorities, and whether he does so or not, he will be affected with notice of every fact, the knowledge of which might there have been obtained. When a person cannot obtain a title but by a deed which leads to another fact, whether by description, recital or otherwise, he will be deemed cognizant of such fact, for it is crassa negligentia that he sought not after it. And for the same reason, if the purchaser has notice of a deed, he is presumed to have notice of the entire contents of the deed.
These are familiar principles, fully recognized in every State where the registry laws- prevail, and no where more firmly than in Virginia. Sugden on Vendors 1056; Adams’ Equity 326.
The learned counsel tells us that Holland knew that the Miller bond had been surrendered and cancelled, and that seven thousand dollars had been paid Miss Coles by the representative of the Miller estate. But Holland himself does not say that he knew these facts, or that he had been informed of them. He says nothing like it; the fact is, he is reticent throughout.
There is nothing in the record to show he had any knowledge of the Miller bond at all, or of its delivery by Miss Coles to Dr. Withers, or of the payment of any part of it. The presumption is, that if his conduct had been in the least influenced by these transactions, he would have said so explicitly._ His astute and vigilant counsel would not fail to perceive the advantage of such a position. It is observable throughout that Holland nowhere alleges that he was induced to part with his purchase money, or that he failed to take any measures for his indemnity and protection, or that he was in any manner, misled to his own prejudice *by anything said or done by Miss Coles, or by. any of the transactions now claimed as a waiver of the vendor’s lien. As against Miss Coles then Holland stands on no higher ground than Miller, the original purchaser. The case is, therefore, free from all embarrassment, or complication, growing out of any supposed equitable estoppels.
I come, then, to the question whether Miss Coles has relinquished her lien for the purchase money secured upon the face if the conveyance executed by her to John Rice Miller.
Before entering into an examination of the transactions relied on, to show the relinquishment, it will be proper to look a little into the principles of law which apply to the case. In the first place, it has long been settled that the vendor of real estate, notwithstanding he has conveyed the legal title, has a lien on such estate for the unpaid purchase money, while it remains in the hands of the vendee, or volunteers, or purchasers with notice. Prima facie, the lien exists in any case, and the burden is upon those who deny its existence to show it has been waived. Whether the lien has been waived, is. as has been universally conceded, a matter of intention. The great difficulty with the courts has always been to determine what is sufficient evidence of such intention. And although the taking a distinct security, according to the weight of modern authority, has been regarded as proof of a waiver, in the absence of an express lien, it has been denied by able and distinguished judges. Rord Eldon-seemed to think that whether a distinct security constituted a waiver, depended entirely upon the circumstances of each case, and that no rule can be laid down universally on the subject; and, therefore, it was impossible for any purchaser to know, without the judgment of a court, in what cases a lien would arise and in what cases it *would not exist.
Nairn v. Prowse, 6 Vesey 752; Mackerth v. Symmons, 15 Vesey 329. This uncertainty in the state of the law, and the perplexing litigation growing out of it, led to the statute passed by our legislature, which provides, that when a conveyance is made, the vendor should not thereby have a lien for the unpaid purchase money, unless such lien is expressly reserved on the face of the conveyance. Upon this subject I refer to the able and exhaustive opinion of Judge Allen in Yancy v. Mauck. 15 Gratt. 300.
What has been said thus far applies only to cases of implied lien, where there has been a conveyance of the legal title to the purchaser; and, it will be observed, the statute just cited, by its express terms, is confined to that class of cases. Where, however, no deed has been executed by the vendor, verv different considerations govern. In such cases the question of implied waiver does not arise. No distinct personal or collateral security will operate as a waiver. By retaining the title the vendor has manifested, in the most unmistakable manner, his purpose of looking to the land as security for his debt. Besides a court of equity will never compel him to part with the title until he has actually received the consideration. As was said in Chapman v. Tanner, 1 Ver. R. 267, “There is a natural equity that the land shall *420 stand charged with so much of the purchase money as may not be paid.” Hatcher’s adm’rs v. Hatcher’s ex’rs, 1 Rand. 53.
In Knisely v. Williams, 3 Gratt. 253, it appeared that the vendor retained the title and took a bond for the purchase money. He afterwards accepted an order on a third person for the purchase money and surrendered the bonds. It was held, that the order being unpaid, the vendor was entitled to enforce his security against the land. In Yancey v. Mauck, already cited, it appeared that before the bonds for the purchase money became *due, an arrangement was made by which the vendee, with his vendor, executed three bonds to a creditor of the vendor for the amount of the purchase money, for which amount the creditors gave the vendor credit, and the vendee’s bonds were surrendered to him. It was held that this land was subject to the lien of the purchase money, even in the hands of a bona fide purchaser. Judge Allen said these arrangements did not change the character of the debt. It still consisted of the purchase money due for the land. Lewis v. Caperton’s ex’or, 8 Gratt. 148. These decisions of the Virginia court are fully sustained by the current of authorities in other States.
Let us now enquire whether there is any substantial distinction between the case of a vendor who retains the title as security for the unpaid purchase money, and the case of a vendor who, conveying the title, retains in his deed an express lien for its payment. Upon principle, there ought to be no solid grounds of difference. In both cases parties dealing with the purchaser have notice of the rights of the vendor. In the one case, the record shows the title retained as security for the purchase money. In the other, a lien reserved for the same purpose. If in the one case the character of the debt is not changed, by a change of securities, neither can it be in the other upon the same facts and circumstances. In both cases the land stands charged with the purchase money, according to the intention of the parties, and is, upon natural principles of equity, the necessary fund for its payment. A lien secured by contract on the face of the deed, stands upon much higher ground than the implied lien, which was a mere creation of a court of equity. In Armentrout’s ex’or v. Gibbons, 30 Gratt. 63.2, this court held, that such a lien constituted a specific charge upon the *land as valid and effectual as a deed of trust or mortgage.
In Patton v. Hoge, 22 Gratt. 443, it was held that the lien being set forth in the very first link of the vendee’s claim of title, purchasers from him had just as much notice of it as they would have had of a lien on the latid, by deed of trust or mortgage. The same view has been taken in other States; in some cases, placing the lien reserved in the deed upon the same ground as the reservation of the title; in other cases treating it as a mortgage 'to secure the payment of the purchase money. Hines v. Perkins’ trustee, 2 Heiskell 395; Anthony v. Smith, 9 Humph. 508; Graham v. McCampbell, Meigs R. 52. Upon this subject see Herman on Mortgages, and numerous cases there cited, for a full discussion of the whole subject. Sections 211, 212, 213, 214.
Indeed jt may be a question whether a reserved lien is not of a higher nature than a mere mortgage security. In many cases the mortgage is treated as a mere incident to the debt, whereas the lien reserved is an express charge inherent in its nature upon the land, which, in equity, is the natural primary fund for its payment. However that may be, a vendor who reserves a lien upon the land, and takes also the bond of the vendee for the purchase money, has two securities, to either of which he may resort at his pleasure.
The lien is a security, not for the bond, but for the debt. Clearly, therefore, the mere cancellation, or surrender of the bond, cannot extinguish the debt, and the lien given for its payment, unless the transaction manifestly and plainly was so intended. So long as the debt exists, the courts will never presume the chief security taken for its payment has been surrendered, without satisfaction, unless upon the clearest and most convincing testimony. The Virginia cases already cited sustain *this position, and the authorities elsewhere sustain it. The rule laid down in 1 Hilliard on Mortgages, '448, 451, 453, is, that nothing short of payment or express release will have that effect.
This distinction between the mere personal obligation of the debtor and security furnished by a reserved lien, or mortgage, has been recognized in numerous cases. In Hanna v. Wilson, 3 Gratt. 232, this court decided that although an action at 'law, on the note given for the purchase money, might be barred by the statute of limitations, the right of the vendor to resort to the land for payment, is not affected by any lapse of time short of a period sufficient to raise a presumption of payment. The decision in Baldwin v. Norton, 2 Conn. R. 161. proceeded upon the same grounds. Chief Justice Swift, in the course of his opinion, used the following language: “It is said the giving up the note for which the land was mortgaged as collateral security, discharges the lien upon the land. But this is no more than adjusting the claim between the first mortgagee and the man who has the.ultimate equity of redemption. It is only relinquishing a legal remedy on the note. It is no payment of it, and the discharge of a right of action at law on the note, will not discharge the land pledged to secure it, without actual payment. There must be a payment of the debt by something besides the thing pledged _ to secure it. Otherwise there is no satisfaction of the mortgage. The cases of Magruder v. Peter, 11 Gill and John 217; Thayer Marin, 19 Pick. 535; Bank of Metropolis v. Guttschlick, 14 Peters’ R. 19, sustain the same view. The learned counsel for the appellee has cited a single case upon the point, Borst v. Corey. 15 New York R. 505, which, so far from being in conflict with thesie au *421 thorities, recognizes, to the fullest extent, the same doctrine. There is an opinion of Chancellor Bland in Moretón, v. *Harrison, 1 Bland R. 491, 493. which expresses so clearly and lucidly this same view, that I will make a citation from it. After speaking of the lien of the vendor, and the lien by mortgage, as being substantially the same, he proceeds to say. “These securities should not be confounded with mere personal securities, or obligations for the payment of money of any class or grade whatever. A bond, promissory note, o'r sim-óle contract, for the payment of money in any shape or form, is a personal contract, which surely cannot, at law or in equity, be assimilated to, or governed by the principles applicable to a mortgage of any description. The plaintiffs do not ask to have their specialty or simple contract enforced as a means of obtaining payment from their debtors. They are here as vendors against the defendant as their vendee, and they claim the benefit of the lien they hold as an incident of that relationship.”
Applying these principles to the case in hand, let ns look at the deed from Miss Coles to John Rice Miller, and the transactions and conduct of the parties subsequent to the execution of that deed. The provision relating to the purchase money is as follows: “The said Elizabeth D. Coles, hereby expressly agrees with the said John Rice Miller, that she reserves a lien on said land for securing the payment of the purchase money, and the interest that may thereon accrue; and the said Miller hereby agrees that the land shall be bound for the same.” Here we have not merely the reservation of the vendor, but a specific charge upon the estate created by the strongest language, and agreed to by the purchaser in terms equally explicit. The object was so to provide for the lien, that there could never be any misunderstanding or mistake with respect to the intention and meaning of the parties. If this lien has been abandoned and the property released, it *has been brought about by a most equivocal transaction, sustained by very equivocal testimony. I do not propose to consume time and labor in discussing the effect of the bond given by John R. Miller to Miss Coles, with C. R. Miller and Isaac H. Carrimrton as bis sureties. Whatever may be said about that bond, can be better said in connection with the question of its surrender to Dr. Edward Withers. That gentleman is the cousin of Miss Coles, the husband of her sister, and the principal witness in behalf of the appel-lee. It is not my purpose to impeach his veracity, or to reflect upon his integrity. It is very apparent, however, that his feelings are enlisted strongly against his kinswoman, and that he is utterly at fault in his recollection of several very important facts.
He is a party defendant to this suit, and has filed his answer. In that answer he tells us that at the time of these transactions his affairs were in an embarrassed condition. The fact is he was then utterly insolvent; and yet he declares it was believed by all parties, that a judgment confessed by him in Miss Coles’ favor, afforded as ample security for a debt of $4,133 as a bond upon the estate of John Rice Miller, endorsed by two unexceptionable securities.
He further says, the distinct object of the arrangements, distinctly understood by Miss Coles, was, to discharge the estate of John R. Miller, and his sureties aforesaid, from all liability upon the Miller bond, and in lieu thereof to take the security of her judgment against this respondent, upon his individual bond.
Dr. Withers has also given three depositions in the case. Neither of them sustains the most material statements in his answer, in his first deposition he produces the impression that the sole object of the arrangement with Miss Coles was to furnish her with ^additional security by a confessed judgment in her behalf. He makes no reference whatever to a release of the Miller debt, or any understanding by which the Miller bond was to be surrendered, and his bond taken in place of it. The fact is, so far as we have any information on the subject, no one asked for the release of the Miller estate from all liability. The sureties on the bond did not ask for it, Mr. Whittle did not suggest it, and Dr. Withers himself does not pretend that he requested or desired it. According to his own version, nothing was said about the surrender of the Miller bond until after the whole transaction with Miss Coles was concluded.
In Dr. Withers’ second deposition, given two years after the first, he varies his statement considerably. He states that Mr. Whittle, in his letter, urged that he. Withers, should secure Miss Coles’ debt by confessing judgment upon a bond which he might execute in lieu of one which she held against John R. Miller and his sureties. At the time Dr. Withers filed his answer, and at the time he gave both these depositions, it was supposed Mr. Whittle’s letter had been lost. Fortunately, it has since been found, and is a part of the record. There is not the slightest | allusion in the letter to the Miller bond, or ¡the execution of another bond in lieu of it. The fact is, Mr. Whittle knew nothing about the Miller bond, he did not even know that Miss Coles held a claim against that estate. Be had been informed that Dr. Withers owed her a debt, which was in danger of being lost by his insolvency, and his sole object in writing the letter was to suggest a confession of judgment in her behalf, with a view to its ultimate security. And yet this letter is made the sole basis for the pretense that the distinct object of the arrangement was to release the Miller estate from liability, and in lieu thereof, take the bond of Dr. Withers, *with a confession of judgment, as sole security. So far as the lien on the land for the purchase money is concerned, it is not pretended that anything was said about it. No allusion has been made to it in any of‘the interviews between Miss Coles and Dr. Withers. It is very probable that Miss Coles did not think of it, or even remember that she had retained *422 it. If the lien has been released, it has been done without being so intended by anybody. I know of no case in which the waiver has been held to exist, except upon the expressed or presumed intention of the parties. According to all the «authorities, the burden is upon the purchaser to show that in the particular case, the lien has been intentionally displaced or waived by consent. Story Eq., § 1324.
But, even if Miss Coles had not reserved a lien on the land, if she had no other security than the Miller bond, it may be a grave question whether the alleged arrangement with Dr. Withers operated as a novation of the debt'. A mere change of securities of equal dignity is not a novation, unless plainly so intended by the parties. Pattison v. His Creditors. 9 Louisiana Annual R. 238; and cases cited. In Lobby v. Geldant, 3 Levintz R. 56, repeatedly recognized as authority, it was held that an obligation by an executor, in satisfaction of an obligation of his testator, is no release, although one binds de bonis testatoris, and the other de bonis propriis. Here Dr. Withers was administrator, with the will annexed of John Rice Miller’s estate, and his wife was the sole ■devisee of that estate. As personal representative he was bound for the debt, and he was also bound for it individually, by reason of assets received through his wife. So far, then, as the immediate parties were concerned, the result was precisely the same, whether Miss Coles held John Rice Miller’s bond, or Dr. Wither’s bond in its place.
*Whether the debt was paid by Dr. Withers out of his own private means, if any he had, or out of the Miller estate.
It often happens that an executor gives his own individual obligation for a debt of the testator; and, although the effect may be to render him personally liable, no one supposes that he thereby waives all claim against the estate. I do not deem it necessary, however, to go into a discussion of the common law doctrine on the subject of accord and satisfaction, novation or conditional payment. Upon that subject, I refer to the noted case of Cumber v. Wane, 1 Strange R. 425, and the notes and cases cited in Smith’s L. Cases, Vol. 1, Part 1, 595; 5 Rob. Pr. 740; and especially to the case of Weakly v. Bell and Sterling, 9 Watts R. 273.
Whatever may be the doctrine of the common law courts on the- subject, a court of equity looks to substance and not to the form of the transaction; and, in this connection, I shall content myself with quoting what has been said in this court on former occasions. “Will the vendee (says Judge Allen) be heard to say, that by shifting the securities the purchase money is satisfied, although he has never paid, and his vendor has never received a cent? Would he not be told, in the language of the president of this court, in Watts v. Kinney, 3 Leigh 293, that a court of equity looks to the substance, not the form; that it looks to the debt (here the purchase money) which is to be paid, not to the hand which may happen to hold it; that the fund (here the land), charged with its payment, shall be so applied, whoever the person entitled, and that it considers a debt never discharged until it is discharged by payment to the proper person.”
Before concluding my opinion on this branch of the case, I will state, that I have not considered at all the testimony of Miss Coles, because it has been executed *to, and there may be a question as to her competency. I am inclined to think, that under the amended statute she is competent to testify as to any transaction between her and Dr. Withers. Code of 1873, ch. 172, § 22. Upon this point, however, my brethren do not wish to be understood as expressing any opinion. If her testimony is legal, it removes every difficulty of the .case. But, without it, I am satisfied that no decision can be safely based on Dr. Withers’ testimony. I do not intend to impeach his veracity. I have no doubt he conscientiously intended to represent the facts fairly; but it is apparent that his version of the transaction is utterly unreliable and erroneous. Upon the whole case, I am satisfied that the lien of the appellant has not been waived, and must be respected by the courts.
Another question is, however, presented, as to the proper application of the payments made. It appears that a settlement took place between Miss Coles and John R. Miller, just before the death of the latter, for the purpose of ascertaining the precise amount due. That result showed a balance of $10,630 due Miss Coles, including the purchase money of the land, for which Miller executed his bond. After the death of the latter, payments were made by his representatives amounting to $6,000, which were endorsed on the bond. The question now arises, how are these payments to be applied by the court? The learned judge of the circuit court was of opinion they ought to be appropriated first to the satisfaction of the purchase money for the land, the result of which is that Miss Coles is as effectually deprived of her security as if she had actually waived.it. I do not deem it necessary to enter into a discussion of the reasons which led the learned judge to this conclusion. They do not seem to me convincing or satisfactory. One of the grounds, however, and the main one on which’his *decision rests, is the supposed equity of Holland, the purchaser, to have this application made for his benefit. It has been already shown, in the first part of this opinion, that Miss Coles’ equity to the payment of the purchase money, out of the land, is as strong as that of Holland to hold the land discharged of it. That the very deed under which he claimed title showed that the purchase money was unpaid, that the land was held bound for it, that it was his own folly he did not inform himself; and, that neither in the pleadings, nor in the proofs, was there any pretense or claim that Holland had been in any manner misled or prejudiced by any thing Miss Coles had said or done. I do not understand, however, upon what principle it is that Holland can interfere in this matter; unless.indeed, he can show some peculiar equity in his favor, growing out of *423 the conduct of Miss Coles toward him, operating by way of estoppel. Holland is not a surety for the debt, but a purchaser of the land, standing in the shoes of Miller, his vendor. The general rule is subject to but few exceptions, and this is not one of them, that the court cannot go outside of the case, or see how third persons may be affected by the application. In Gordon u. Hobart, 2 Story Rt 243, Judge Story said, that the right of appropriation of payments was one strictly existing between the original parties, and no third person had any authority to insist upon any appropriation of such money in his own favor, where neither the debtor ojr the creditor had made or required it. See upon this subject cases cited, ch. 9, p. 75. et seqitur, in Munger on the Application of Payments.
In most of the cases the great contention is, whether the court will apply the credits most beneficially for the creditor or the debtor. The general rule, subject, however, to exceptions, is, that where there are two debts, the one secured and the other not. the court will *apply the payment to the debt for which there is no security. And the reason is, that without such application, the creditor will lose part of the debt. This rule'is sustained by a uniform current of authorities all over the country. See cases cited in Munger, on the Application of Payments, ;f 34; 1 American Leading Cases 352-356. Tt has not been, however, always followed in this State, nor has it been expressly or impliedly repudiated. This court has repeatedly held, that no general rule applicable to every case, could be adopted and adhered to without producing great hardships. If neither party has made the application, the court will exercise a sound discretion, and make the application according to its own notions of what may be right and proper in the particular case. Smith v. Loyd, 11 Leigh 512, and this rule is abundantly supported by authority. Munger 81. 99.
It must be admitted that this is a very loose and indefinite way of expressing a principle of law, but it has been declared by very eminent judges. In the present case, it seems to me the only proper solution of the difficulty is in applying the credits pro rata to all the debts. I cannot see upon what principle the payments are to be appropriated, exclusively to the purchase money, and thus.in effect to deprive Miss Coles of all. security upon her debt, and every part of it, in favor of Holland, to whom she owes no duty. Nor can I see any just ground for applying them exclusively to the other debts, for all are included in one bond, and the payments are endorsed thereon generally. The parties in some measure have themselves made the application to all the debts. There are numerous cases which sustain the pro rata application, especially where there are several claims secured by one instrument or judgment. See Greenleaf on Evi., § 535. In Blackstone Bank v. Hill, 10 Pick. R. *128, it was said by the supreme court of Massachusetts, “AH the debts owed by the plaintiffs having been consolidated, into one by the judgment, and that one having been partially discharged, all the notes embraced in it must be taken to be satisfied proportionately. See also White v. Trumbull, 3 Green N. J. R. 314; Shaw v. Picton, 10 Eng. C. L. R. 443. In the present case there is nothing to preclude us from adopting the same rule. Indeed, it is difficult to see how any other can be adopted, inasmuch as the parties themselves have applied the credits generally upon this bond. This would give Miss Coles a sum about equal to the principal of her debt. Practically, it can make no great difference as this is all, perhaps, that could now be realized by a sale of the land.
For these reasons stated, my opinion is, that the decree of the circuit court must be reversed, and a decree entered in conformity with the views herein expressed.
CHRISTIAN, ANDERSON and BURKS, Js., concurred in the opinion of Staples, J.