# CHARLESTON.

CRAIG *et als.* v. GAULEY COAL LAND COMPANY.

Submitted January 21, 1914.   Decided February 3, 1914.

1. VENDOR AND PURCHASER—*Remedy of a Vendor—Construction of Deed.*

   A deed conveying a tract of land by metes and bounds in consideration of a stipulated price per acre, describing it as containing by survey 900 acres, reciting the total supposed amount of purchase money and reserving a vendors lien to secure deferred payments thereof as estimated or supposed, evidences a sale of the land by the acre and gives right to the grantors to demand compensation for an excess at the stipulated price per acre.   (p. 626).

2. SAME—*Vendor's Lien—Debt Secured.*

   But the vendors lien, limited in terms to the two notes for deferred payments, does not secure payment of compensation for such excess.   (p. 627).

3. SAME—*Vendor's Lien—Extinguishment by Release—Compensation for Excess.*

   In such case, an instrument duly executed as a release, one part of which releases the right reserved in the deed, and the other stipulates against estoppel from collection of compensation for any excess that may afterwards be discovered, completely extinguishes the lien and saves only the right to sue for such compensation.   (p. 627).

4. EQUITY—*Limitation of Actions—Application of Statute—Concurrent Jurisdiction.*

    The cause of action arising out of mutual mistake in the settlement as to the amount of purchase money in such case is one of concurrent jurisdiction, and is subject to the bar of the statute of limintations. (p. 629).

5. LIMITATION OF ACTIONS—*Commencement of Period.*

    In the absence of obstruction to the right of action for such a claim by fraud in some form, the statute runs against it from the date of the settlement. (p. 629).

6. SAME—*Commencement of Period—Mutual Mistake—Settlement.*

    Acts between the grantees and strangers to the contract and to which the grantors were in no way parties, do not constitute such fraud, even though they may· have tended to conceal· the cause of action. (p. 631).

(WILLIAMS, JUDGE, absent.)

Appeal from Circuit Court, Nicholas County.

   Bill by J. S. Craig and others against the Gauley Coal Land Company. From a decree for plaintiffs, defendant appeals.

*Reversed and Remanded.*

*Alderson & Breckenridge, Brown, Jackson & Knight,* and *Angus W. McDonald,* for appellant.

*Craig & Wolverton,* and *Mollohan, McClintic & Mathews,* for appellees.

POFFENBARGER, JUDGE:

On a bill for compensation for excess of land in a sale and conveyance thereof by the acre, filed by J. S. Craig and the executor of the will of W. M. Tyree against the Gauley Coal Land Company, the trial court found the land conveyed had over run the estimated quantity by 159·67/100 acres and entered a decree for the purchase money thereof at the rate of $5.00 per acre with interest thereon from March 18th 1891, the date of the deed which amounted at the date of the decree to the sum of $1758.35. It further declared said sum to be a lien upon the land by virtue of a reservation in the deed, and ordered a sale of the land, in case of default in the payment of the sum so ascertained and decreed.

The several defenses set up to the bill were: (1) that the

sale was one in gross or at hazard, wherefore there was no right of recovery, even though the excess be conceded; (2) that the vendors lien reserved in the deed does not cover the excess, even though the sale was by the acre and originally there was liability on the contract for compensation for the excess; (3) that the claim, if originally well founded, is barred by laches and the statute of limitations; and (4) that the Gauley Coal Land Company, the successor of the Gauley Coal Land Association, to which the conveyance had been made, is a purchaser for value without notice and so not liable for the excess.

The land was conveyed by metes and bounds as a tract containing by survey 900 acres, and the purchase money computed and agreed upon as $4500.00, of which $1500.00 was paid in cash and the balance left as a lien upon the land, payable in two installments, due respectively in six months and one year from the date of the deed. Reciting these two notes, representing the deferred payments of the purchase money, the deed reserved the vendors lien in the following terms: "to secure the payment of which a lien is expressly reserved on the land hereby conveyed."

Reciting a consideration of "five dollars per acre," the deed virtually says the contract of sale was by the acre and not of a tract of land in gross. If the specification of nine hundred acres as the quantity of the land and the recital of forty five hundred dollars as the purchase money, the latter being an exact multiple of the former, renders the deed ambiguous on its face as to whether or not the sale was by the acre, the recital of five dollars per acre as the consideration of the grant resolves such ambiguity in favor of the grantors, for presumptively it is a recital pro tanto of the contract pursuant to which the conveyance was made, whether that contract was verbal or written. When considered as raising an ambiguity as to the character of the contract, the recitals of quantity and total amount of purchase money are treated as mere circumstances, not as terms of the contract, importing agreement. As circumstances, they raise a doubt as to the character of the contract, removable by resort to extraneous evidence. In the recital as to the consideration

there is deeper and more potent significance. The terms
thereof are contractual in form and effect, and import an
express agreement as to the basis of compensation for the
tract of land sold. Under a dictum in *Pratt* v. *Bowman*, 37
W. Va., 715, 720, they are conclusive. Therefore, the deed
properly construed, expresses a contract of sale by the acre.

If the vendor's lien reserved secures the payment of the
excess of purchase money, justly due under the terms of
the contract, in excess of the estimated amount, forty five
hundred dollars all of which has been paid, the third and
fourth grounds of defense may be ignored as being imma-
terial. The lien as reserved does not in terms cover such
excess, unless the words in which it is reserved can be supple-
mented by the recital as to the terms of the contract. After
having set forth a description of the land by metes and
bounds, the deed proceeds as follows, ''containing by survey
nine hundred acres; the purchase money for same aggregating
four thousand five hundred ($4500.00) Dollars one third—
fifteen hundred ($1500.00) dollars of which is to be paid in
hand on the delivery of this deed fifteen hundred ($1500.00)
dollars six months from the date hereof and fifteen hun-
dred ($1500.00) dollars the residue thereof in one year from
said date for which last two payments notes have been exe-
cuted to the parties of the first part, bearing even date here-
with and legal interest from date and to secure the payment
of which a lien is expressly reserved on the land as hereby
conveyed.'' As has been shown, the contract really calls
for more than forty five hundred dollars, in the event of an
excess of land, for it requires the grantees to pay five dollars
for each and every acre. The terms in which the lien is
reserved however, literally cover only the estimated amount
of purchase money, less the cash payment of fifteen hundred
dollars. Important inquiries therefore, are whether the
entire deed may be considered for the purpose of determining
the extent of the lien, and, if so, whether, all of its provisions
considered, the lien reserved extends beyong the unpaid three
thousand dollars of estimated purchase money. Another
paper of subsequent date has been put into the record under
the supposition of its relevancy and materiality upon these

inquiries. It is a release of the lien, executed in 1893, the first part of which releases the right reserved in the conveyance, and the second part of which reads as follows: ''But this release shall not *estop* the said Craig and Tyree from collecting under their contract for any additional acreage that may hereafter be shown by a correct survey of the tract above referred to.''

The contract for purchase money and the reservation of the lien are separate and distinct things, independent contracts; for, in the absence of a special agreement for it, made in a prescribed manner, there is no lien for purchase money, however evidenced as a debt and however clear the right to it. In the absence of an express reservation of a lien in the deed, the obligation for the purchase money does not adhere to the land as an incumbrance thereon. The lien is governed altogether by the terms in which it is reserved, and sustains no peculiar relation to the contract of purchase. It may include more or less land or a greater or less interest than was conveyed. *Patterson* v. *Grottoes Company,* 93 Va. 578; *Patton* v. *Hoge,* 22 Gratt. 443; Jones on Liens, sec. 1114.

The saving clause in the release, read with the reservation, does not enlarge it. On the contrary, the release discloses satisfaction of the lien whatever its extent may have been. The first part of that instrument unconditionally and unqualifiedly releases ''the right reserved'' in the deed, and so clearly extinguishes the lien. The saving clause was a mere precaution against estoppel by the release from collection for any additional acreage that might be later discovered. It contains not a word expressive of intent to continue the lien for any purpose. Hence it does not limit or qualify the antecedent full and complete release. To apply this paper otherwise would do violence to settled rules of interpretation. All of the words must be allowed effect according to their usual and ordinary meaning, if possible, and, to permit them so to operate, it is necessary to treat the first clause as a complete release of the lien and the other as a mere saving against an apprehended estoppel by implication from collection of compensation for a possible excess by the ordinary remedy, a suit at law or in equity.

There being no lien to sustain the remedy in equity, grounds for equity jurisdiction must be found in something else or the bill must fail for jurisdictional reasons. There was neither fraud nor mistake in the contract, since the sale was by the acre and without special reference or regard to the quantity of the land. The demand is not based upon either, but upon the payment of the money claimed. In that · respect it is purely and distinctively a legal one, not cognizable in a court of equity. But, according to the allegations of the bill, there was a mistake in the settlement for purchase money made under the contract. The deed itself recites a stated account and settlement on the basis of 900 acres at $5.00 per acre, and payment of the estimated amount, $4500.00, made the stated account technically a settled one. Owing to the mutual mistake of the parties as to the quantity of the land, the settlement was erroneous to the extent of the excess in quantity at $5.00 per acre. For the correction of such mistake, resort may be had to a court of law or a court of equity, as the injured party may elect. Courts of equity give relief in such cases. *Lee's Adm'r.* v. *Reed,* 4 Dana, Ky. 109; *Wickliffe* v. *Mosely,* 4 J. J. March. (Ky.) 172; *Barnett's Adm'r.* v. *Barnett,* 6 J. J. Marsh. (Ky.) 499; *Waggoner* v. *Minter,* 7 J. J. Marsh. (Ky.) 173; *McCrae* v. *Hollis,* 4 Desall, S. C. 422; *Bankhead* v. *Alloway,* 6 Cold. Tenn. 56; *Love* v. *White,* 4 Hayw, Tenn. 210; *Chappedelaine* v. *Dechenaux,* 4 Cranch. 306. Jurisdiction in the law courts is equally well stttled. *Safe* v. *Howley,* 16 Conn. 106; *Remington* v. *Noble,* 19 Conn. 382; *Lancy* v. *Railroad Co.,* 157 Mass. 258. The cause of action, therefore, is one of concurrent jurisdiction.

When the statute of limitations, the protection of which is invoked by the demurrer to the bill, begins to run against causes of action arising out of mistake depends upon the circumstances of the case and the nature of the subject matter. The broad proposition asserted in *Craufurd* v. *Smith,* 93 Va. 623, 631, that no lapse of time or delay in bringing the suit, however long, will defeat the remedy in cases of fraud or mutual mistake, is not to be taken without its qualification, that the party must be without fault, negligence or lack of

diligence. According to some authorities, the statute begins to run from the date of the mistake. *Lancey* v. *Railroad Co.*, 72 Me. 34; Buswell on Limitations, sec. 171; Wood, Stat. Lim., sec. 119 p. 325, note; 25 Cyc. 1180, 1195. But there are exceptions, founded upon the peculiar circumstances and postponing the operation of the statute until the discovery of the fraud or mistake. "But in many jurisdictions the equitable rule that the statute begins to run upon the discovery of the fraud has been adopted by the courts, or statutes embodying that rule are applied to actions at law as well as in suits in equity." 25 Cyc. 1180. "The equitable principle which governs the running of the statute of limitations in cases where equitable relief is sought on the ground of mistake is substantially the same as that applicable in cases of fraud." 25 Cyc. 1195. Manifestly it should be because fraud and mistake are very similar in their consequences. Against a cause of action arising out of a fraud, the statute runs from the date of the perpetration thereof. *Thompson* v. *Whitaker Iron Co.*, 41 W. Va. 574. But, if the defendant has obstructed the prosecution of the action by concealment of the fraud, the running of the statute is postponed until discovery. *Newberger* v. *Wells*, 51 W. Va. 624. In the case just cited, the cause of action was founded alternatively upon both fraud and mistake, and had for its purpose recovery of compensation for an excess of land in a conveyance thereof. The bill was dismissed upon a demurrer thereto because it failed to excuse the laches disclosed on its face and to allege obstruction of the prosecution by concealment of the fraud so as to postpone the operation of the statute. The principles thus applied are sustained by almost universal authority. "The general rule, often substantially embodied in the local statutes, is that if the plaintiff without any fault or neglect on his part is ignorant of the mistake, the statute begins to run when and only when the mistake is discovered, provided that the cause of action is one for relief on the ground of mistake and not one as to which the mistake is merely collateral or incidental." 25 Cyc. 1195-6. The converse of the proposition must be equally true. If

there is fault or negligence, the statute is not postponed until the date of discovery.

The bill in this cause carries on its face an admission of knowledge sufficient to put the plaintiffs upon inquiry as to the quantity of land. In the deed exhibited therewith, they stipulated for compensation for any land there might be in the tract beyond the supposed, reputed or estimated area, and the release executed by them in 1893, fifteen years before the institution of this suit, discloses anticipation on their part of an excess, in the provision against estoppel therein made. Under the authorities already cited, this was sufficient to put the statute in operation against them, unless they were influenced to forego investigation by fraudulent conduct on the part of the defendants, amounting to concealment of the cause of action. It imposed duty upon them to ascertain for themselves and at their own expense whether there was an excess, for there was no undertaking on the part of the grantees to make the investigation for them. They were dealing at arms length. There was no confidential relation between them. The grantees were under no duty to disclose to the grantors subsequently acquired information as to the quantity of the land. That they afterward surveyed the land, finding an excess of 174 acres, and sold the timber on it as a tract containing 1074 acres, and nevertheless permitted it to remain on the land books for taxation, or kept it there, as a tract of 900 acres, facts alleged as matter of concealment or fraud, are clearly insufficient to take the case out of the statute. They were all res inter alios acta. When such acts are admissible in evidence at all, they are merely corroborative of similar acts or transactions directly between the parties themselves. 20 Cyc. 118, 119. The bill alleges no representation of any kind or character as to the quantity of the land from the grantees to the grantors, nor any other act done to them, having a tendency to mislead.

Upon these principles and conclusions, the decree will be reversed, the demurrer sustained and the cause remanded with leave to amend the bill.

*Reversed and Remanded.*