# CHARLESTON.

Rose M. Cameron *v.* Earl R. Cameron

(No. 6451)

Submitted October 3, 1929. Decided October 8, 1929.

*John L. Gillispie* and *Poffenbarger & Poffenbarger,* for appellant.

*Beverly Brown, Lon H. Kelly* and *R. S. Spilman,* for appellee.

Hatcher, Judge:

This suit was instituted March 29, 1926. The plaintiff seeks to vacate a decree entered on February 2, 1924, which annulled the marriage of herself and defendant, Earl R. Cameron. This is the second appeal of this cause to this Court. The decision in the first appeal is reported in 105 W. Va. 621, to which reference is had for a statement of the litigation. A reading of that opinion shows that two of the vital issues of the case, the charge of fraud against the defendant by the plaintiff, and the charge of laches against the plaintiff by the defendant, were not passed upon by this Court, and that the cause was remanded to the circuit court for its decision thereon. No further proceedings were had in the circuit court upon the second hearing, except the filing of

a petition by Ruth Grigg Cameron with whom the defendant intermarried on July 10, 1925. Briefly stated, the petition alleges that petitioner met defendant in April, 1925; that the acquaintance ripened into friendship and later he asked the petitioner to marry him; that he told her of his former marriage to the plaintiff, and exhibited to her a copy of the decree annulling that marriage; that relying upon that decree she married the defendant; that she had no information whatever that the plaintiff questioned the validity of the decree until about March 19, 1926, and had no knowledge of the intimacy between plaintiff and defendant which existed after the institution of the annulment suit. She prays that the court will recognize and preserve her rights and status as the lawful wife of defendant. No evidence was taken on the petition but counsel for the litigants stipulated that if the petitioner were placed upon the witness stand, she would testify in manner as her petition alleges.

The circuit court found that the defendant was guilty of no fraud in relation to the annulment suit, found that the plaintiff was guilty of laches in bringing her suit, and dismissed the bill.

The members of this Court are not in accord as to whether plaintiff has sustained her charges of fraud. We are concordant, however, on the charge of laches against plaintiff. As our view on her laches is decisive of the cause, a discussion of the charge of fraud becomes unnecessary.

The evidence is conclusive that the plaintiff was served with personal process in the annulment suit; that she was personally served with notice of the taking of depositions therein; that counsel for her husband refused to withdraw the suit at her request and upon her representation that Cameron desired it withdrawn; that within a month or so after entry of the annulment decree she was told of its entry; that despite all of this information she relied on alleged statements of Cameron that he would have the suit dismissed, that he had dismissed it, etc., and delayed for more than two years before instituting the present suit; that the annulment proceedings are regular in every respect and the annulment decree is valid on its face; and that Ruth Grigg had no

notice and nothing to put her on notice of any infirmity in the annulment suit or of the claims of the plaintiff against Cameron. The plaintiff cannot be excused for ignoring the information she received from third parties as to the institution, the progress and the conclusion of the annulment suit. This information was so persistent and reliable that the law imposed on her the duty of investigation and prompt action. Because she failed in this, the rights of Ruth Grigg, an innocent party, have intervened and cannot now be disregarded.

Counsel for plaintiff cite authorities holding that laches is not chargeable in a case of "confidential relationship" such as existed between the plaintiff and Cameron after the entry of the annulment decree. See 26 C. J., pp. 1158-1160. That relationship may prevent Cameron from successfully asserting laches against the plaintiff, but it has no effect on the status of Ruth Grigg. Her marriage did not occur until nearly a year and a half after the entry of the annulment decree; it therefore cannot be termed a "hasty marriage". After asserting that a second marriage if hasty, would not prevent the vacation of a decree procured by fraud annulling the first marriage, the leading authority relied upon by plaintiff says, in the same section she cites: "Where the defrauded party has delayed in asserting her rights for an unreasonable time the decree should not be disturbed. * * * Every principle of estoppel and laches should be applied to defeat the party complaining of fraud where a second marriage has taken place." 2 Nelson Divorce and Separation, sec. 1053. This rule is reiterated and elaborated in section 1056. It is universally recognized. See 9 R. C. L., pp. 452-3; 19 C. J., pp. 170-1. The reason for the rule is well stated in McNeil v. McNeil, 170 Fed. 289, 292: "The safety of society imperatively demands that one who seeks to overthrow an apparently valid decree of divorce should proceed with the utmost promptness upon discovery of the facts claimed to show its invalidity. It must be apprehended that a man who has secured a decree of divorce valid on its face may endeavor to marry again, thus entangling some innocent woman in most intolerable difficulties should the divorce be afterwards annulled." This case is particularly applicable here because

the delay there of eighteen months in bringing the suit (a shorter period than the delay here) was held unreasonable.

We are of opinion that the delay of plaintiff in instituting this suit was unreasonable under the circumstances, and that the decree of the lower court refusing her relief must be affirmed. The majority of the Court, however, are of opinion that the defendant Cameron misled the plaintiff in regard to the annulment suit, that he is not in position to assert laches against the plaintiff, and that for those reasons the costs of this appeal must be assessed against him.

*Affirmed.*

MAXWELL, JUDGE, (concurring):

I concur in the result because I think the rights of Cameron's present wife are paramount to the rights of Rose M. Cameron, whose standing in this proceeding as to the present wife is destroyed by laches. Were it not for the fact that the present wife is innocent of this whole affair and a reversal of the circuit court's decree would be calamitous to her, I would favor such reversal and a setting aside of the decree of annulment obtained by Cameron against the plaintiff, as, in my opinion, it is clearly apparent from the evidence that she was misled and imposed upon by her husband in connection with that matter. I am authorized by JUDGES WOODS and LITZ to say that they concur in this note.