ROSE M. CAMERON *v.* EARL R. CAMERON

(No. 7072)

Submitted October 14, 1931.    Decided December 12, 1931.

John L. Gillespie, for plaintiff in error.
Beverley Broun and Price, Smith & Spilman, for defendant in error.

LITZ, PRESIDENT:

This is an action of tresspass on the case instituted May 2, 1930, in the court of common pleas of Kanawha county, by Rose Cameron against her former husband, Earl Cameron, to recover damages for fraud practiced by him upon her in securing an annulment of their marriage, and in actively concealing the fact until his remarriage, which barred her subsequent suit to vacate the decree. To the ruling of the trial court, sustaining a demurrer to the declaration, she prosecutes error.

The controversy having been heretofore twice considered by this court a brief recital of its history is necessary to an understanding of the present action. Plaintiff married George Lumley, December· 24, 1900. She entered into a second marriage with defendant, February 19, 1921, believing in good faith at the time that she had obtained a valid divorce from Lumley, April 29, 1910, in a divorce proceeding theretofore instituted by her against him in the. circuit court of Boyd county, Kentucky. October 24, 1923, Cameron instituted suit against her in the court of common pleas of Kanawha county to annul her marriage with him on the ground that she was not divorced from Lumley at the time of its celebration. No appearance being made on her behalf, a decree of annulment was entered in the cause February 2, 1924. Plaintiff and defendant lived and cohabited together as husband and wife during the pendency of the suit and thereafter until about July 10, 1925, when he intermarried with Ruth Grigg. November 20, 1925, the Kentucky court entered a decree nunc pro tunc, dissolving the marriage between plaintiff and

Lumley as of April 29, 1910, after reciting that such judgment had been rendered in the cause on the latter date, which, through oversight, had not been previously entered. On March 29, 1926, Rose Cameron brought a chancery suit against Earl in the circuit court of Kanawha county to vacate the annulment decree on the ground that she had been induced by his fraudulent representations to forego defense to the annulment proceeding and because of his false representations to her after the decree that the suit had been abandoned and dismissed. He denied the fraud and charged her with laches in delaying the institution of suit.

The ruling of the circuit court, dismissing her bill, on the ground that no decree had been rendered in the Kentucky divorce proceeding, was reversed by this court, and the cause remanded for hearing upon the issues of fraud and laches raised by the bill, answer and proof. 105 W. Va. 621. Ruth Grigg Cameron then filed a petition in the cause stating that she was , at the time of marrying Cameron, wholly ignorant of any fraud or claim of fraud practiced by him upon Rose Cameron, and praying that her rights and status as his lawful wife be recognized and preserved. The circuit court then entered a decree, exonerating him of the charge of fraud in procuring the annulment decree, convicting plaintiff of laches in bringing the suit, and dismissing her bill. Upon the second appeal, a majority of this court, overruling the foregoing findings of the circuit court, held that the fraud had been established; that because of his deception and imposition upon plaintiff he was precluded from asserting laches against her, and that she was, therefore, entitled to costs against him. But, because of his marriage to Ruth Grigg, the court was unanimous, in refusing to cancel the decree of annulment. This action followed.

The grounds of demurrer to the declaration are (1) that plaintiff by electing to sue in equity for restoration of the marriage relations is estopped to maintain an action for damages against defendant for fraudulently procuring the decree of annulment; (2) that the fraud charged constitutes a tort committed by him against her during the coverture, and, under the common law, does not amount to a legal wrong;

and (3) that if the fraud was consummated only as the result of the annulment, the remedy has terminated under the statute of limitations.

Sufficient answer to the first ground of demurrer is that a party is not estopped to maintain a second suit unless the two suits have substantially the same aim and scope and the remedy sought is substantially the same in each. 9 R. C. L. 464. Moreover, the annulment proceeding was the appropriate remedy in the first instance. "A decree of divorce obtained by a husband by false testimony in a suit which the wife failed to defend, will be vacated on the wife's application, irrespective of the wife's excuse for her default, as the state was an interested party to the suit, and its interests had been imposed upon by the conduct of the husband, requiring that its rights be vindicated." *Jones* v. *Jones*, 91 Atl. 819. In the opinion of the court it is said: "There is another consideration which requires that this decree be vacated. The state is an interested party to the suit. Its interests have been imposed upon by the malevolent conduct of the petitioner, and public policy demands that its rights be vindicated."

Fraud practiced by one spouse against the other in securing a dissolution of the marriage is a legal wrong often serving as the basis of a suit to vacate the fraudulent decree. The fraud is not consummated and, therefore, does not exist until the entry of the decree dissolving the marriage. A right of action at law to recover damages for a fraud accures when the fraud is necessarily consummated, and not before; or, more briefly stated, fraud dates from its consummation and not from its origination or from the happening of circumstances or incidents in the course of its development. 27 Corpus Juris 20; 37 Corpus Juris 935; *Phelps County* v. *Bishop*, 68 Mo. 250. To further test the proposition: Suppose fraud committed by one spouse upon the other during coverture is actionable, could the plaintiff in this case have sued before the marriage was dissolved? What injury had she suffered before that time? "The ground of the action of deceit is fraud and damage, and when both concur the action will lie. Moreover, both must concur to constitute actionable

fraud, a common statement of the rule being that neither fraud without damage, nor damage without fraud, is sufficient to support an action.'' 12 R. C. L. 239. Plaintiff's injury did not precede but followed the entry of the annulment decree or dissolution of the marriage. How then can it be said that her marriage status was still existent at the time of sustaining the injury, complained of, which occurred after, and as a result of, the entry of the annulment decree?

We are of opinion that the statute of limitations was suspended from the entry of the annulment decree to the marriage of Cameron to Ruth Grigg in July, 1925. It appears from the allegations of the declaration that defendant's fraud in actively concealing the facts from the plaintiff continued until the date of said mariage. Although the plaintiff was guilty of laches as to Ruth Grigg (*Cameron* v.*Cameron,* 107 W. Va. 655; 150 S. E. 225), Cameron's continued fraud operated to relieve the plaintiff of laches as to him. (It was only because of the intervening rights of Ruth Grigg Cameron that plaintiff was denied a decree in the chancery cause.) On the same general principle it must be said, in the light of the allegations of the declaration, that Cameron's persistent fraudulent conduct toward the plaintiff operated to toll the statute of limitations.

The remedy not having been terminated prior to the institution of the chancery suit to cancel the annulment decree, the pendency of that proceeding also tolled the statute. Chapter 104, section 19, Code 1923 (55-2-18, Code 1931), provides: ''If any action commenced within due time, in the name of or against one or more plaintiffs or defendants, abate as to one of them by the return of no inhabitant, or by his or her death or marriage, or if, in an action commenced within due time, judgment (or other and further proceedings) for the plaintiffs should be arrested or reversed, on a ground which does not preclude a new action for the same cause, or if there be occasion to bring a new suit by reason of the said cause having been dismissed for want of security for costs, *or by reason of any other cause, which could not be plead in bar of an action,* of the loss or destruction of any of the papers or records in a former suit which was in due

time; in every such case, notwithstanding the expiration of the time within which a new action or suit must otherwise have been brought, the same may be brought within one year after such abatement, dismissal or other cause, or after such arrest or reversal of judgment, or such loss or destruction but not after.'' The present action was brought within one year from the dismissal of the chancery cause.

Furthermore, defendant, by fraudulently concealing the entry of the annulment decree, prevented the plaintiff from securing its cancellation by institution of suit prior to his remarriage.

The declaration alleges that during the pendency of the annulment suit and the time intervening between the entry of the annulment decree and her discovery thereof, after his remarriage, plaintiff and defendant continued to live together as husband and wife, and that he *at all times assured* her the suit had been abandoned and dismissed. This allegation setting up his active concealment of the fraud, brings the case within the exception to the statute of limitations, wherein it provides that if a right of action ''shall accrue against a person who had before resided in this state, if such person shall, by departing without the same, or by absconding concealing himself, *or by any other indirect ways or means*, obstruct the prosecution of such right, * * * the time that such obstruction may have continued shall not be computed as any part of the time within which the said right might or ought to have been prosecuted.'' Chapter 104, section 18, Code 1923 (55-2-17, Code 1931.) ''When a person by any indirect ways or means obstructs the prosecution of a right, the time during which such obstruction continues shall not be computed in the limitation periods prescribed in Code c. 104.'' *Reynold's Adm'rs.* v. *Gawthrop's* Heirs, 37 W. Va. 3, 16 S. E. 364. As the declaration charges a continuing fraud, the statute did not begin to run until the representations had ceased or their falsity was discovered. 37 C. J. 946. See *Madole* v. *Miller,* 119 Atl. 892; *Shields* v. *Nathan,* 108 Pac. 34; *Connecticut etc. Ins. Co.* v. *Smith,* 38 Am. St. Rep. 656; *Dean* v. *Dean,* 214 S. W. 505. Furthermore, in cases, like this, where confidential relations exist between the

parties and the basis of the action is actual fraud, many courts hold that mere silence on the part of the guilty party will toll the running of the statute. ''It has been stated many times that, if the basis of the action is actual fraud, mere silence is regarded as a continuation of the original fraud, and as constituting a fraudulent concealment; and this would seem to be especially applicable to cases where the parties bear to each other a trust or confidential relation.'' Case note, 21 L. R. A. (N. S.) 963.

We are of opinion, therefore, to reverse the judgment complained of, overrule the demurrer, and remand the case.

*Reversed* and *remanded.*

MAXWELL, JUDGE, (concurring):

Stripped of verbiage and immaterial considerations, there is here presented the claim of a *feme sole* against her former husband for damages for fraudulent destruction by him of her status as *feme covert.* As basis of her suit she relies, not on machinations of the husband preliminary to the climax of his alleged fraud, but upon the consummated act of destruction of her status. I so construe the declaration.

I am therefore impressed that it would be a very narrow, strained and unwarranted construction which would bar her from recovery on the theory that the cause of her complaint arose within the period of the marriage between plaintiff and defendant.

HATCHER, JUDGE, (dissenting):

This case is here on a demurrer to the declaration, alone, and not on a demurrer to the declaration supplemented by the extraneous history of the conduct and the litigation between the parties, as the majority of the Court has treated it. I know of no authority for such treatment, and accordingly shall limit my consideration to the declaration. Its material allegations are that (1) plaintiff and defendant were legally married on February 19, 1921, and lived together as husband and wife until on or about June 28, 1925, when defendant wrongfully and permanently abandoned her; on October 24, 1923, defendant scheming to destroy fraudulently her mairtal rights, and without just cause, instituted a suit for the purpose of having their marriage annulled;

(3) she did not hear of the suit "for a long time thereafter," and upon asking defendant about it, he wrongfully informed her that he was only bringing the suit "for the purpose of clearing up and clarifying" their marriage, promised that the suit would be dismissed, and she relied on his statements; (4) on February 2, 1924, a decree was entered annulling their marriage, but defendant continued to live with her as her husband and "at all times" assured her that the suit had been dismissed; (5) she first learned of the annulment decree in July, 1925, and on March 29, 1926, instituted a chancery proceeding for the purpose of setting aside the annulment decree; (6) the proceeding was tried in the circuit court( result not stated) and appealed to the Supreme Court, which rendered a decision sustaining the annulment decree "for the sole reason that the said defendant had remarried and the rights of his second wife had intervened" (this is the only reference in the declaration to a remarriage or to the second wife); and (7) by reason of defendant's fraud and deceit so practiced on plaintiff, he wrongfully violated his duty as a husband to her, destroyed her marital status and rights, and caused her great "humiliation and distress of mind and body," etc.

A summary of plaintiff's complaint is that through the willful deception of her by defendant (during coverture) he fraudulently procured the termination of their marriage. In other words, the wrong she charges is against her wifehood. There is no allegation of injury arising from representations or promises made to her after the entry of the annulment decree. There is no allegation that defendant's deception following the decree prevented a restoration of her marital rights before his remarriage. Consequently, the subsequent conduct charged is pictorial rather than material.

The common law relating to the wrongs against a wife by a husband is not repugnant to the constitution of West Virginia and is unaffected by statute. Consequently that law is still the law of the State. See Constitution, Article VIII, sec. 21. That law affords no redress to the wife for such wrongs either before or after divorce. 15 Am. & Eng. Ency. Law, 857; 13 R. C. L. subject Husband and Wife, sec. 443; 30 C. J.,

subject Husband and Wife, secs. 317 and 319 and 675; Schouler, Marriage, Divorce, etc. (6th Ed.) secs. 627 and 630; Madden on Domestic Relations (1931), sec. 69. The leading case in England on this subject is Phillips v. Barnet, 45 Q. B. Div. 277, which held: "An action by divorced wife against her former husband for acts done during the coverture will not lie." The leading case in the states is *Abbott* v. *Abbott*, 67 Me. 304, 306, 24 Am. Rep. 27, 28 (decided in 1877), which held exactly with the English case, saying: "Divorce cannot make that a cause of action which was not a cause of action before divorce." Modern statutes "emancipating" the wife do not affect this part of the common law. *Lillienkamp* v. *Rippetoe*, 133 Tenn. 57, 59-60, L. R. A. 1916B 881; *Strom* v. *Strom*, 98 Minn. 427, 428, 6 L. R. A. (N. S.) 191; *Bandfield* v. *Bandfield*, (Mich.) 40 L. R. A. 757, 759; *Peters* v. *Peters*, (Cal.) 23 L. R. A. (N. S.) 699, 701; *Decker* v. *Kedley*, 79 C. C. A. 305; *Thompson* v. *Thompson*, 218 U. S. 611, 618; 30 C. J., p. 715, sec. 318; 13 R. C. L. 1395. The law on this subject, whether right or wrong, is definite.

The majority excepts the instant case from the common law rule on the theory that the fraud was not perpetrated during coverture. The opinion says: "The fraud is not consummated and therefore does not exist until the entry of the decree dissolving the marriage." The citations upon which this theory is based have reference strictly to *actionable fraud*. Since there is no actionable fraud at common law between man and wife, the statement and the citations are not *apropos*. Even were they apposite, the fraud was *entirely consummated within coverture* because the marriage was in effect until the decree dissolved it, and the entry of the decree necessarily preceded the dissolution. This consideration is not changed because the termination of the marriage by the decree was immediate. It is suggested that this is a narrow construction. If being exact is narrow, then the suggestion is well made. But we are now in a court of law dealing with a common law matter, and the common law is admittedly rigid and exact. The common law even regards husband and wife as one person, which is the narrowest possible view of their relation. It was because of the rigor and strictness of

the common law that courts of equity were established where liberal construction could prevail. As long as we retain the common law system, I see no way to escape exact construction. Besides, the theory of the majority is heedless of the declaration. It predicates plaintiff's right of recovery on false statements and broken promises, made to her by defend-during the progress of the suit, and while the marriage relation still existed. No duty of defendant is charged; but the allegation of duty breached is that defendant "violated willfully and wrongfully every duty that he as a husband owed to this plaintiff." There is no charge of deceit practiced on the court. The purpose of defendant's deception was accomplished ("consummated") *in fact* when plaintiff relied upon the representations he made to her while he was still her husband. The annulment decree followed as a matter of routine. To say that defendant's deception *did not exist* until the moment the decree was entered is opposed to the facts alleged and is a sublimation of fancy which I cannot follow.

The majority proposes this test: "Suppose fraud committed by one spouse upon the other during coverture is actionable, could the plaintiff in this case have sued before marriage was dissolved?" Conjecture on an hypothesis of what is not the law, will not illuminate the discussion. This matter cannot be tested by *if this* and *suppose that*—it is foreclosed. It is a matter as definitely settled as the law of the Medes and Persians was said to be—that a wife has no common law right of action for the violation of a duty, "every duty" even—which her husband owed her, and divorce, or annulment, does not make a right where none before existed. (Equitable relief for such violation will be referred to later.) The majority is further influenced by the thought that plaintiff's injury did not precede but followed the entry of the decree. Concededly correct in the main—but consider this case: A husband viciously slandered his wife while a divorce' suit was pending between them; shortly afterwards a decree of divorce was entered, and she suffered from the effects of that slander for many years. The part of her injury from the slander which preceded the entry of the decree is so small in comparison to the part which folowed as to be inconsequent-

ial. Yet the common law admittedly gave her no right of action for the slander. I see no difference in principle between that case and the instant case.

The majority forecloses the discussion by demanding how it can be said that plaintiff's marriage status still existed after the entry of the annulment decree from which resulted her injuries. This is a set up of "the straw man." I have heard no one say, and I shall not say, that plaintiff's marriage status existed after the decree was entered. Another infirmity in this demand is the failure of the majority to recognize that injuries from wrongs inflicted during matrimony, usually (if not invariably) flow on after divorce. The wrong and its resultant injuries alleged in the instant case differ only in kind and degree from the wrong and injuries of many divorced women. If the common law allowed compensation for the injuries which follow a woman after divorce, "Instead of settling," said the court in *Abbott* v. *Abbott, supra,* "a divorce would very much unsettle all matters between married parties. The private matters of the whole period of married existence might be exposed by suits. The statute of limitations could not cut off actions, because during coverture the statute would not run. With divorces as common as they are now-a-days, there would be new harvests of litigation. If such a precedent was permitted, we do not see why any wife surviving the husband could not maintain a suit against his executors or administrators for defamation, or curelty, or assult, or deprivations that she may have wrongfully suffered at the hands of the husband; and this would add a new method by which estates could be plundered. We believe the rule, which forbids all such opportunities for law suits and speculations, to be wise and salutary and to stand on the solid foundations of the law."

There is no occasion in such cases to ignore facts and indulge in mere theory, because of the rigor of the common law. Wrongs to a wife are not without redress. In *Abbott* v. *Abbott, supra,* her remedies are enumerated as follows: "The criminal courts are open to her. She has the privilege of the writ of *habeas corpus,* if unlawfully restrained. As a last resort, if need be, she can prosecute at her husband's

expense a suit for divorce. If a divorce is decreed her, she has dower in all his estate, and all her needs and all her causes of complaint, including any cruelties suffered can be considered by the court and compensation in the nature of alimony alowed for them.'' A like statement appears in *Main* v. *Main,* 46 Ill. App. 106, 108. The remedy for fraud is in equity. ''Broadly stated, with the single exception of fraud in obtaining a will, courts of equity have jurisdiction to relieve in all cases of fraud where the in jury is of a private nature.'' 21 C. J., subject Equity, sec. 82. Equity jurisdiction is not affected because the fraud is perpetrated by one spouse on the other. In equity the fiction of the unity of husband and wife is disregarded and the two are treated as distinct persons with separate and personal rights. 3 Story Eq. Juris. (14th Ed.), sec. 1793. In a suit in equity of a wife to vacate an annulment decree procured by fraud of the husband, the court would have indubitably the right to decree her whatever amount she was justly entitled to, as damages for the fraud, no matter how the suit terminated. Merely because the exigencies of the situation prevented a vacation of the decree would afford no ground for refusing her compensation. If the idea that equity should afford a remedy for a tort seems novel, consider that a divorce suit itself ''is founded on a matrimonial wrong'' and ''is in essence an action of tort, though not technically known by this name.'' 2 Bishop on Marriage, Divorce and Separation, secs. 488 and 489.

I have heretofore regarded it as settled law that a judgment is conclusive not only of the matters actually decided but of all matters which properly might have been determined in the suit. See 34 C. J., subject Judgments, sec. 1322, and the many cases cited in the notes, including *Fleming* v. *Ry. Co.,* 82 W. Va. 1, 82 S. E. 819 and other West Virginia decisions. The plaintiff could have asked properly in her suit to vacate the annulment decree, for the very damages which she now seeks to recover in this action. She did not do that. Even the majority treats the present action as a part of ''the controversy * * * twice considered by this court.'' It would therefore seem she is estopped to litigate the matter

further. In passing, I will call attention to the fact that the citation in support of the majority view of this subject, to-wit, 9 R. C. L. 464, does not sustain its position.

The majority holds: "We are of opinion that the statute of limitations was suspended from the entry of the annulment decree to the marriage of Cameron to Ruth Gregg in July, 1925." The declaration makes no specific reference to the marriage of Cameron to Ruth Gregg. The declaration does say that plaintiff was ignorant of the annulment decree until in July, 1925. (Were it permissible to regard our decision in the former suit between these parties, I would remind the majority that we found as follows: "The evidence is conclusive that * * * within a month or so after the entry of the annulment decree she was told of its entry." See *Cameron* v. *Cameron*, 107 W. Va. 655, 656, 150 S. E. 225. As the annulment decree as entered February 2, 1924, she first learned of its entry "within a month or so" instead of in July, 1925, as she now alleges and as the majority would find.) It may be the history of the parties discloses that Cameron and Miss Gregg were married in July, 1925. However that may be, it seems that as far as the majority should go, would be to say that under *the allegations of the declaration* the statute of limitations was suspended until July, 1925.

Judge Lively authorizes me to say that he joins with me in this dissent.

*Upon rehearing.*

In support of the petition for rehearing it is urged that the plaintiff cannot maintain this action because it is said that it is "an effort to recover damages for the fraudulent obtaining of a decree which stands unreversed at the time the action is brought," and "is in law a collateral attack upon that decree, and that this the policy of the law forbids." The principle contended for is thus stated in an excerpt from a North Dakota case, *Tuttle* v. *Tuttle*, 181 N. W. 898: "As long as the former adjudication remains in force, the losing party cannot maintain an action against the successful party

for obtaining the judgment by fraudulent and wrongful practices.''

The soundness of this proposition as a general principle must be recognized, but the principle cannot in reason be carried to the extent of protecting from liability for damages a defendant whose fraud in procuring a decree has been adjudicated, as in this case, (*Cameron* v. *Cameron,* 107 W. Va. 655, 150 S. E. 225), and the fraudulent decree remains in effect only because of the intervening rights of an innocent third party.

It having been already judicially determined that the annulment decree had been procured by fraud, that question is no longer an issue. The plaintiff is not attacking the annulment decree collaterally, but is relying on the subsequent adjudication of its fraudulent procurement. The adjudication by this Court that the annulment decree had been fraudulently procured, is as final and effective on that question as if a cancellation of the decree had also been ordered. This action does not depend upon a mere *charge* of fraud, but has as its basis a solemn judicial determination of fraud. As stated in 2 Freeman on Judgments, (15th Ed.), section 782, relied on by the defendant, the reason for the rule forbidding an action of damages for the fraudulent procurement of a judgment as long as it ''remains in force'' is that ''the *charges* made in the second action are conclusively negatived by the former adjudication.'' The former adjudication, has been superseded by a subsequent decree holding that it had been fraudulently procured, and therefore does not negative ''the charges made'' in the action. Briefly stated, the right of the plaintiff to sue for damages results from the decree establishing the charge of fraud and denying her specific relief because of the intervention of the rights of an innocent third party.

To demonstrate the fallacy of the rule as applied to this case: Suppose A fraudulently procures a judgment in his favor for the land of B, and before B discovers the fraud, conveys the property to C, a purchaser for vaule without notice; in a suit by B against A to cancel the fraudulent decree the court would, in order to protect C, deny B specific

relief, after holding that the decree complained of had been fraudulently procured. B could not (according to the contention of defendant) recover damages against A for the wrong because the fraudulent decree had been permitted to stand in order to protect the rights of an innocent third party.