# CHARLESTON.

## KINNEY v. TOWN OF WEST UNION.

### Submitted January 16, 1917.   Decided January 23, 1917.

1. ABATEMENT AND REVIVAL—*Survival of Causes—Action.*

   Causes of action that survive, and may be prosecuted by or against the personal representative of a decedent, primarily and generally are such as affect property or property rights, the wrong to the person being merely incidental.   (p. 466).

2. LIMITATION OF ACTIONS—*Running of Statute—Alteration of Street Grade.*

   Five years is the limitation period prescribed for actions to recover damages to real estate occasioned by the alteration of a street grade or by an improvement in the street of a municipality. (p. 465).

3. MUNICIPAL CORPORATIONS—*Change of Grade of Street—Liability.*

   A municipal corporation is chargeable with the consequential damage to real estate resulting from the construction of an approach to a public bridge in a street under its control, although the structure extends across the corporate boundary and was built under the authority of the county court, the town and county jointly contributing to the cost of the improvement, the town alone changing the grade of the street and erecting one of the approaches to the bridge.   (p. 465).

4. SAME—*Damages—Evidence.*

   In an action to recover damages for injuries to real estate, due to public improvement, it is error to admit testimony to show an unsanitary condition produced by the accumulation of water, or injury to a private sewer, caused by the improvement, where the declaration fails to aver such injuries as elements of the cause of action.   (p. 467).

5. TRIAL—*Province of Court—Opinion of Facts.*

A well recognized rule of practice, general in its application, based on the theory of an absolute impartiality, requires a judge to refrain from indicating, in terms or by conduct, an opinion upon the facts detailed to a jury upon the trial of an action, or upon defects of construction in a public improvement when viewed by the jury at the instance of the litigants.  (p. 467).

Error to Circuit Court, Doddridge County.

Action by J. Ed Kinney against the Town of West Union. There was a judgment for plaintiff, and defendant brings error.

                    *Reversed, and remanded for new trial.*

*A. F. McCue,* for plaintiff in error.

*W. S. Stuart,* for defendant in error.

LYNCH, PRESIDENT:

Conceiving himself aggrieved by the diminution in the value of his property, resulting from the alteration of the grade of Neely avenue in front of his house and lot and the appropriation of the major part of the avenue at that point to the construction of the abutment and approach to a bridge, approximately half of which is within the limits of the defendant corporation, plaintiff brought this action, and obtained the judgment which defendant charges is infected with error.  Apart from the approaches, steel and cement entered into the construction of the piers, abutments, supports, girders, flooring and guard rails, and lumber into the approaches except as to the cement footers for the platform supports.  The county court of Doddridge county, as the active agency in the erection of the bridge, assumed the liability for the cost of the improvement, upon the condition that it was to be reimbursed to the extent of one half of the expense incurred, the town of West Union, the sole defendant, to permit the appropriation of Neely avenue, within its corporate limits, to consummation of the improvement. While the record does not clearly disclose the method by which the reimbursement was to be effected in the proportion required, it is conceded in argument by counsel representing each liti-

gant that two thirds of the fund necessary for that purpose was raised by public subscription, the town contributing the other third thereof out of its annual revenues, and that it furnished the material and performed the work required to construct one of the approaches necessary to render the entire structure available for public travel when completed, and, further, that these conditions were performed fully and satisfactorily as contemplated by the parties at the inception of the work.

This concurrence in the expense of the improvement is accounted for only on the theory of the joint interest of the court representing the county and council representing the town, and lack of the authority or power of either of them acting alone to cause the bridge to be built or of sufficient funds under the control of either to complete the bridge. With the motive prompting the joint action, or the correctness of either theory or the propriety of the enterprise, we are not now concerned. As to none of these matters is there any question raised or doubt cast by either of the parties. The bridge was completed, and the structure opened for the use of the public and now is used by it.

By the first assignment, defendant challenges the correctness of the ruling on its demurrer to the declaration. It is charged to be insufficient, solely because it shows on its face that the action was commenced after the lapse of one year from the date the cause of action accrued, hence barred by the statute. That provision, however, does not apply. The cause of action would, under the statute, have survived the death of the plaintiff at any time within five years after the right to sue had accrued to him, whether he had brought or failed to bring the action while living. The right to sue in the first instance, or to prosecute in the second, would not have abated by death except after the expiration of five years. In part the injury averred consists of an obstruction to the free use and enjoyment of a public street in its original condition, a use interrupted by the change of grade and by the superimposition of an additional servitude due to the abutment and approach created by the defendant itself within the corporation boundary. An action for such obstruction sur-

vives to the personal representative. *Fleming* v. *Railroad Co.,* 51 W. Va. 60. Causes of action *ex delicto* that survive, and may be prosecuted by or against a personal representative, primarily and generally are those which affect property or property rights, the wrong to the person being merely incidental. 1 C. J. §303; *McDaniel* v. *Woodford,* 73 W. Va. 736; *Gawthrop* v. *Coal Co.,* 74 W. Va. 39, point out the line of demarcation between causes of action which survive to or against the representative of a decedent and those that finally abate by his death. Generally, tort actions for wrong to property rights survive, while actions for wrongs done to the person abate, except, among others, that the right to maintain actions for statutory penalties dies with the person. *Gawthrop* v. *Coal Co., supra.* Clearly, the declaration is not defective in that particular; and it sufficiently states a good cause of action.

On the theory that, as the bridge, although in part within the town limits, was constructed under the direction and control of the county court, that court alone is liable to respond in damages for any pecuniary loss occasioned thereby to the property of the plaintiff, also is relied on to exonerate defendant from the liability sued for. That burden can not so be shifted, nor defendant thereby relieved from responsibility for the injury resulting from an act in the consummation and maintenance of which it participated, and the benefit of which it has since enjoyed. So far as the structure is within its territorial jurisdiction, the municipality is liable for the consequences of the original construction and its location in the thorofare under its control, and for injuries due to lack of proper maintenance and repairs. The bridge when completed became part of the streets of the town, and, as such, subject to its dominion and control. *Curry* v. *Mannington,* 23 W. Va. 160; *Cavender* v. *Charleston,* 62 W. Va. 654. If its maintenance creates a nuisance, it is subject to municipal correction; if it wrongfully inflicts injury upon the person or property of another the town must respond to the injury. These principles are so well settled in this state as not to require further discussion or citation of authority. In Maine, the court in *Perkins* v. *Oxford,* 66 Me. 545, held

defendant liable for injuries caused by defects in an inter-urban bridge jointly constructed by defendant and another municipal corporation, where the injury occurred within the jurisdiction of the defendant, although due to the failure of the other corporation to repair its part of the structure. A similar holding will be found in *Peckham* v. *Burlington*, Brayt. (Vt.) 134.

Defendant assigns as erroneous the admission over its objection of testimony introduced by plaintiff in support of his right to a recovery, that in the process of the erection of the necessary piers the contractors caused an interruption of the flow of a sewer connecting the property alleged to be damaged with Middle Island creek, whereby his cellar became flooded with water, inflicting physical injury to his property. The correlation of this proof with the cause of action averred in the declaration is not apparent. Indeed, it is inconsistent with the permanent injury claimed by the plaintiff. The defect so introduced is readily remediable; it has been remedied by the repair of the breach in the sewer line. For the expenditure so occasioned the defendant may or may not be liable, but surely not in this action. This proof should not have been admitted.

Without any averment in his declaration to impart to defendant information of an intention to offer proof on that phase of the case, plaintiff was permitted to introduce testimony tending to show the accumulation of water on the approach and its escape through the flooring to the ground below in front of his house and lot, thereby creating an unsanitary condition which injuriously affected the value of his property. Without such averment for the purpose of notice, this proof ought not to have been admitted. The purpose of a declaration is fully to state the essential elements of the cause of action averred as the basis of the recovery demanded, to enable the defendant to prepare his defense to meet the different important phases of the claim preferred against him.

Again, defendant complains of the undue activity of the presiding judge during the progress of the trial, and especially while the jury was engaged in viewing the premises at the request of the plaintiff. While a judge is sitting at the trial

of a case before a jury, he occupies an exalted position and exercises important legal functions. Ordinarily he does and properly ought to refrain from any undue participation in the examination of witnesses in lieu of counsel engaged in the conduct of the trial, except where he seeks special enlightenment upon the statement of a witness misunderstood by him or upon some phase of the case necessary for a just decision of the matters involved and overlooked by counsel. Even then the ethics and proprieties of the office forbid resort to any demonstrative language, artifice or device, whether intended or dissembled, or any manner of expression the effect of which is to impart to the jury trying the case or readily lead them to adopt the views so indicated by language or action, instead of a conclusion reached in the ordinary mode in an effort to arrive at just results unaided by judicial influence. A judge, it is true, is clothed with an authority and charged with the performance of functions other than those of a mere presiding officer of an indiscriminate assemblage convened for the accomplishment of some public purpose. He is not a mere figure-head to put motions and decide points of order. But the importance and dignity generally conceded to the position and the fact that he is presumed to be wholly impartial as between litigants emphasize the necessity for avoiding, in so far as the exercise of his legitimate functions will permit, any act or conduct that would indicate to the triers of the facts the views of the judge upon any matter to be submitted to them for determination. It is to their judgment, not the judgment of the court, that parties submit their cases in the first instance. Sound principles deny the right of a judge actively to point out and by pointing out indicate the seriousness of the defects or imperfections of construction in property viewed by them at the instance of counsel to enable them to understand and weigh with accuracy the testimony later detailed to them by the witnesses. It is a rule of practice well recognized and general in its application that a judge should refrain from indicating an opinion as to the facts of a case on trial by a jury. And it is just as much a violation of this wholesome rule to do by innuendo or other indirect means what it forbids him to do

directly or specifically. 1 Thomp. Trials, §§218, 219; 38 Cyc. 1316. What effect upon the jury, if any, resulted in this case from the remarks so made in their presence no one can know, perhaps not even the members thereof; and although doubtless what was said was not intended to influence them in ascertaining the true facts, yet it is a matter of common observation that jurors are alert always to hear and interpret the remarks directed to them from the bench; and, while we might not be disposed to reverse the judgment for this reason alone, we can not wholly ignore what seems to be an unconscious and doubtless unintentional infraction of these sound and well authenticated principles and rules of procedure.

The troublesome questions arise out of the instructions given at the instance of the plaintiff upon the measure of damages in cases of this character. Many of them present mere abstract legal principles, usually the embodiment of points of the syllabus of decided cases involving cases similar to the one before us. Upon the use of these this court has frequently animadverted, not because of any doubt of the correctness of the principles announced, but because when delivered to a jury not trained in legal discrimination there is danger of a misapplication to the facts of the case before them. Indeed, many of the witnesses examined upon the trial, who seem to have been men possessed of more than an ordinary degree of intelligence and acumen, confessed their inability to comprehend without assistance from the court or counsel the distinction between general and special benefits to the property involved, when applied to inquiries of this nature. Yet to aid the jury there were propounded upon this vital inquiry instructions abstract in form, which have been differently interpreted almost if not altogether as frequently as any other subject considered by courts and authors of law text books. Concededly the statement and application of the doctrine of special benefits is inextricably involved in confusion. Besides, a correct understanding of the principle embodied in the instructions does not always assure its correct application by the jury. What properties are "similarly situated"—an expression somtimes used in the decisions—is

a question as to which exist grave doubts in the minds of ordinary men. The mere location on the street of property convenienced, perhaps benefitted, by a public improvement does not necessarily exclude the idea of general or special benefits to other properties not on but near such street; and yet the rule obtaining in this state does exclude the benefits accruing to properties in the same community, although other jurisdictions extend the doctrine so as to include them. Again, the measure of damages prescribed in the instructions requires the jury to ascertain as best they can the difference in value immediately before and immediately after the improvement is made, ignoring general benefits and deducting special benefits, when benefits of each character doubtless had theretofore accrued in contemplation of the projected improvement and before work thereon began. These difficulties are pointed out, not for the purpose of disturbing the measure prescribed with more or less exactness in many of our decisions, but to illustrate the improbability of a jury of laymen possessing the capacity to absorb and apply that standard of measurement supplied to guide their deliberation when presented in an abstract form without any attempt to assist them in the proper application of the standard to the facts before them. But, to avoid any misapprehension, it is proper to observe that one of the earliest and perhaps an accurate abstract definition of peculiar benefits, applicable alike to this case and to condemnation proceedings, is: Such benefits as particularly and exclusively affect the particular tract of land damaged, and not advantages of a general character which may be or are derived in common by the owners of land along the line of improvement or benefits derived by the community at large. *Railroad Co.* v. *Foreman,* 24 W. Va. 662; *James River Co.* v. *Turner,* 9 Leigh 313; see also *Harman* v. *Bluefield,* 70 W. Va. 135.

Apart from the irregularity noted, which may be cured upon the second trial, the instructions given are not erroneous, except number five requested by plaintiff, which is unintelligible as it appears in the record; and except number five given for defendant, which is erroneous in principle, if not misleading. Plaintiff's instruction number one we think

is not subject to the criticism urged against it. It does not foreclose inquiry into the question of liability, as defendant contends. What has been said as to the broken sewer and accumulation of water indicates the impropriety of the instructions requested upon these matters. As the evidence upon another trial may be materially different, it is not proper now to indicate our views upon the criticism urged against the amount of the verdict and judgment.

We therefore reverse the judgment, set aside the verdict, and remand the action for a new trial.

*Reversed, and remanded for new trial.*