# CHARLESTON.

JAMES RYAN *et al* v. THE COUNTY COURT OF MONONGALIA
COUNTY *etc.*

Submitted March 16, 1920.   Decided March 23, 1920.

1. HIGHWAYS—*Record Showing County Court's Refusal of Petition to Relocate Road Held Conclusive.*

   Where the only record evidence of any action taken by the county court upon a petition praying the relocation by that body of a portion of a county road within its jurisdiction shows its consideration of the proposal, refusal to undertake the work and dismissal of the proceeding, such evidence generally is conclusive where the alteration or relocation of such road is brought in question. (p. 42.)

2. MANDAMUS—*Lies to Compel Judicial Action, But Not to Determine Result.*

   While ordinarily mandamus lies to compel an inferior tribunal to act upon matters presented for adjudication, if within its jurisdiction, it is not available to require the exercise of judicial discretion or judgment in any particular manner. Its office is to compel the exercise of judicial action, but not to determine what the result of the adjudication shall be. (p. 43.)

3. JURY—*Mandamus—Jury Trial Unnecessary in Mandamus Involving no Issue of Fact.*

   In a proceeding in mandamus involving no issue of fact, trial by jury is unnecessary. Quaere: Whether trial by jury may ever properly be demanded as a matter of right in mandamus proceedings. (p. 43.)

4. MANDAMUS—*Remedies Provided for Acquiring Land for Public Road Precludes Mandamus.*

   Generally there are but three methods by which the public may acquire a valid right to use land owned by another as and for a public road or highway: (1) By condemnation proceeding, with compensation to the property owner for the damage resulting from such forceful taking; (2) by continuous and adverse user by the public during the statutory period, accompanied by some official recognition thereof as a public road by the county court, as by work done on it by a supervisor acting by appointment of that tribunal; (3) by the owner's

86 W. Va.

dedication of the land to the public use, or by his consent to such use given in writing, and acceptance of the dedication by the proper authorities.   (p. 44.)

Error to Circuit Court, Monongalia County.

Action for mandamus by James Ryan and another against the County Court of Monongalia County.  From a final order awarding the writ, defendant brings error.

*Reversed, and proceedings dismissed.*

*Stanley R. Cox,* for plaintiff in error.
*Lazzelle & Stewart,* for defendants in error.

LYNCH, JUDGE:

James Ryan, owner of 225 acres of land in Union district, Monongalia County, and his brother, Charles N. Ryan, owner of 200 acres in Preston County, the two tracts being contiguous, by petition applied to the judge of the circuit court of Monongalia County, in the vacation of the court, for a writ of mandamus directed to the county court of that county and its several members to command them "to open or cause to be opened for the use of your petitioners and the public generally as a public county road the said new and relocated Sand Spring road heretofore relocated and opened under the order and direction of said the county court of Monongalia County on the 2d day of January, 1919, and thereafter used as and for a public road, instead of the old Sand Spring road, by the traveling public generally and by the carrier of the United States mail, until the same was closed by the order, direction or permission of one of the members of said county court in February, 1919, or show cause, if any it, the said the county court of Monongalia County, can, why it should not do so."  After the defendant county court had filed its answer and return the parties took testimony in vacation before the court in lieu of a jury, and upon the pleadings and proof adduced the latter entered a final order in term time awarding the writ.  To review that action this writ of error was granted.

There are upon or within the lands of the Ryans, according to the allegations of their petition for writ, valuable limestone deposits, and, in order to obtain a better grade than the old road

afforded for hauling from the lands stone quarried or crushed thereon, they petitioned the defendant county court during the summer of 1918 to relocate part of the old road, a distance of about 300 yards along and parallel with it, and thereby materially improve the road grade along such portion. The relocation necessitated a change of the road to land owned by others. No formal order authorizing the removal was entered by the court, but one of its members, being assured that the consent of such property owners had been obtained, directed the road supervisor, or patrolman, as he is called by the Good Roads Law hereafter referred to, to make, and not to exceed $60 in making, the necessary change. This was done at an expense of $20 and the relocated road opened to travel on or about January 2, 1919, but was closed a few weeks later by order of another member of the court upon receipt of the protest of the owners whose land was affected by the relocation. To compel the county court to reopen the road is the purpose of this proceeding.

No record evidence of any action taken by the county court upon the original petition of the plaintiffs shows an intention or design on its part to relocate the road as prayed for therein. There is no order authorizing the relief sought, or anything in that regard except the direction given by one of its members to the road patrolman, to which we already have referred. The absence of such record evidence generally is of itself conclusive in such matters where the establishment of a road is brought in question. *Williams* v. *Main Island Creek Coal Co.,* 83 W. Va. 464, 98 S. E. 511. What the court did and all it did in response to the prayer of the petition, speaking from the record, was to enter an order June 16, 1919, constituting its members a committee "to go upon the ground and view the same and report in writing the advantages and disadvantages which, in their opinion, will result as well to individuals as to the public from the proposed work, and the grades and bearings of the proposed road, and the facts and circumstances that may be useful to enable the county court to determine whether such work ought to be undertaken by the county;" and later to enter a second order July 9, 1919, which contains these recitals: "And the commissioners of the county court, as a committee of their own body, having been appointed and authorized to view the ground, now

here report on the record that they did view the proposed location of the alterations in the public road known as the Sand Spring road in Union district, together with the county road engineer, and that no advantage will result to any individual from the proposed alteration, and the commissioners recommend that the alterations so proposed to the said road be not undertaken by the county court. It is thereupon ordered by the county court that the county court refuse to undertake the proposed work, and that this proceeding be and the same is hereby dismissed.'' These orders declare in no uncertain terms the entire absence of an intention on the part of the court to commit itself to the establishment of changes or alterations in the Sand Spring road.

Nor is the coercive remedy sought by plaintiffs against the county court proper or available in such a case. By often repeated decisions this court has refused to interfere by mandamus with the exercise by county courts or other inferior tribunals of the discretionary power conferred upon them, such as that bestowed by sections 74, 75, 76 and 78, chapter 43, Barnes' Code 1918, being sections of the Good Roads Law passed by the Legislature at its January, 1917, session, respecting the right of such courts to control the location, establishment, alteration and changes of the public roads and bridges in their counties. The exercise of such power to control is in its nature judicial and not subject to regulation or direction by mandamus, especially as to the performance in any particular manner of the duties assigned to them by these provisions. The most that a superior court may cause or direct by the writ to be done is to require such courts to act upon the facts presented by petitions as therein prescribed, but not to do or leave undone any act within the scope of their legitimate and discretionary powers. Here the respondent has exercised the right sought to be enforced, and has by its order expressly declined to grant the relief prayed by relators in their petition, and refused its consent to the proposed alteration of the road. As authority for these propositions, see *State* v. *County Court,* 33 W. Va. 589; *Miller* v. *County Court,* 34 W. Va. 285; *Marcum* v. *Ballot Commissioners,* 42 W. Va. 263; *Poling* v. *Board of Education,* 50 W. Va. 374; *Rose* v. *O'Brien,* 80 W. Va. 280.

For the first time in the history of judicial proceedings in

this state, so far as we are able to discover, respondents assign as erroneous the failure to submit to trial by jury the questions raised upon the application for the peremptory writ. Whether entitled to it or not, they did not demand such a trial but appeared and participated in the examination of witnesses without protest or objection on their part. And, further, the decision as to the advisability of relocating the road in question was solely within the sound discretion of the county court and involved no question of fact which could be submitted properly to a jury. Where there is no issue of fact to be decided a jury is unnecessary. *State* v. *Anding,* 132 Minn. 36; *Lyman* v. *Martin,* 2 Utah 136, 149; *People* v. *Town Board,* 33 Mich. 335; 19 Standard Enc. of Procedure, p. 278. Nothing said in this opinion, however, is to be understood as intended, directly or indirectly, to recognize under any circumstances the existence in this state of a right to trial by jury in mandamus proceedings, whatever may be the rule in other jurisdictions.

But there is another and more fundamental ground upon which plaintiff's claim to the relief sought must be denied. Omitting from consideration the question of ways of necessity, which is not involved here, there are but three methods by which the public may obtain a valid right to use land owned by another as and for a public road or highway. The first is by condemnation, with compensation to the property owner for the damage resulting from such forceful taking. The second is by continuous and adverse user by the public during the statutory period, accompanied by some official recognition thereof as a public road by the county court, as by work done on it by a supervisor acting by appointment of that tribunal. *Williams* v. *Main Island Creek Coal Co., supra.* The third is by the owner's dedication of the land to the public use, or by his consent to such use given in writing, and acceptance of the dedication by the proper authorities. None of these methods was followed in this instance. As to the first, there can be no question, for there is no claim whatsoever that a right of way across the land has been obtained by condemnation. With regard to the second, it suffices to say that the user, even if adverse, continued no longer at most than a month and a half, and the evidence tends to show that only nine days elapsed between the opening and closing of

the road.  The proof is equally clear with respect to the third.
The original and unofficial instruction given by one member of the
county court to the road patrolman to relocate the road and
expend for that purpose not to exceed the sum named was based
apparently upon plaintiffs' assurance that the owners of the land
would offer no objection to its use for that purpose.  But the
evidence shows that they did object, and as soon as the court
was informed of their objection it properly acquiesced, and,
again unofficially, directed the opened way to be closed.

Upon what ground plaintiffs base the claim of right to compel
the county court to reopen such road over the objection of the
owners of the land is not clear.  The lack of authority thus to pre-
empt property owned by others against their will without resort
to the formal procedure of condemnation is so palpably apparent
that we are unable to see how a different conclusion could have
been reached.  There is no shadow of foundation upon which
plaintiffs' claim can rest.

Other questions presented and briefly discussed upon this
motion to reverse made pursuant to and in accordance with the
provisions and requirements of section 26, ch. 135, Code of
1918, concern the action of the judge in awarding the alterna-
tive writ in vacation, and likewise presiding during the examina-
tion of witnesses whose testimony was to be read in the form of
depositions upon final hearing of the case, and in awarding the
peremptory writ, require only brief notice.  That a circuit
judge may in vacation award an alternative writ is settled
affirmatively by the concluding provision of section 3, ch. 123,
Code.  That he did not in vacation award the peremptory writ
seems obvious from the bills of exceptions.  And that he did the
other things alleged is immaterial now, first, because respond-
ents did not object but acquiesced and participated therein, and,
second, because apparently no prejudicial or harmful results
thereby ensued to them.

But for other sufficient reasons heretofore discussed our order
will sustain the motion to reverse and vacate the judgment and
dismiss the proceeding.

*Reversed, and proceedings dismissed.*