STATE *ex rel.* R. H. DUNN, *et al.*

*v.*

H. K. GRIFFITH, STATE ROAD COMMISSIONER

(No. 10650)

Submitted April 13, 1954. Decided June 1, 1954.

*John H. Goad, Martin C. Bowles,* for relators.

*John G. Fox,* Attorney General, *T. D. Kauffelt, Donald L. Schaffer,* Assistant Attorneys General, for respondent.

HAYMOND, JUDGE:

In this original proceeding in mandamus the petitioners, R. H. Dunn and Janet A. Dunn, his wife, seek a writ from this Court to compel the defendant, The Honorable H. K. Griffith, State Road Commissioner of West Virginia, to institute a proceeding in eminent domain against the petitioners in the Circuit Court of Kanawha County to determine and award just compensation for a parcel of land, claimed by the petitioner R. H. Dunn, heretofore taken by the state road commission for use as a public highway and damages caused by the construction of such highway to the residue of the land owned by petitioner R. H. Dunn.

The petition was filed November 24, 1953, and on November 30, 1953, this Court issued a rule returnable January 13, 1954. At that time, by agreement of the attorneys for the petitioners and the attorneys for the defendant and permission of this Court, hearing upon the petition was continued until April 13, 1954, to enable the parties to obtain the testimony of witnesses by depositions. On April 13, 1954, this proceeding was submitted for decision upon the petition; the answer and a special plea of the statute of limitations of the defendant, filed January 12, 1954; the demurrer and a special replication, designated a "special plea", of the petitioners to the special plea of the defendant, filed March 26, 1954; depositions in behalf of the respective parties and certain exhibits attached to such depositions, filed April 13, 1954; and the written briefs and the oral arguments in behalf of the respective parties.

There is little, if any, dispute in the material facts disclosed by the foregoing pleadings and the depositions of

the witnesses and the issues involved present questions of law.

In 1941 the state road commission undertook to increase the width, and to construct a concrete surface on the right of way, of a public highway known as U. S. Route No. 60 in Louden District, Kanawha County, which is a part of the primary road system of this State, on the south side of which a tract of land of 10.17 acres owned by petitioner R. H. Dunn abutted for a distance of several hundred feet. At that time the boundary line between this tract and the right of way of the highway was indicated by several iron pins set in the ground at different locations along the edge of the highway.

During the course of the improvement some equipment and material used by the commission in the construction of the project and a quantity of dirt from the right of way were temporarily placed upon the adjoining land of the petitioner R. H. Dunn who then was, and evidently still is, a busy medical practitioner and the owner of a hospital in the City of South Charleston. The presence of these objects on his property led him to discuss the extent of the improvement with respect to the boundary of his land with a representative of the commission who, according to the testimony of Dr. Dunn told him that in the construction of the highway the commission "was not going to take" any of his land. Dr. Dunn also testified that he relied upon this statement, did not investigate the location of the highway with respect to his property, and did not know that any part of the highway was actually constructed on his property until sometime in 1951 or 1952 when he learned of the encroachment in connection with negotiations between him and the commission by which it sought to acquire additional land from him to extend the width of the highway at that time which resulted in the institution by the state road commissioner of a condemnation proceeding for that purpose which has not been determined and is now pending in the Circuit Court of Kanawha County; and that he did not know the

name of the person who told him that the commission would not take any of his land but that the person with whom he talked was present when the work was in progress and appeared to be the engineer in charge of the project.

The work done in 1941 was finished and the highway was opened to the use of the traveling public on September 24, 1941. When the highway was completed a portion of it was actually located on a strip several feet in width of the land of Dr. Dunn abutting the right of way of the highway for a distance of several hundred feet. The area of the land so occupied by the highway is 6549 square feet. The highway as located and constructed has been continuously used as a public highway since September 24, 1941, and public moneys and labor have been expended on it. The petitioners have not executed any conveyance to the commission of any part of the land occupied by the highway and they have not received any compensation for any of the land so taken by the commission. The actual encroachment of the highway upon the land was not discovered by the commission until sometime in 1952 when, from a survey and a map made by it of the boundary between the abutting land and the right of way, it was definitely determined that a portion of the highway was constructed on the abutting strip of land and has been so located since its completion in 1941.

By written stipulation between the attorneys for the respective parties to this proceeding it is agreed that the petitioner R. H. Dunn, prior to 1941, and at the time the commission took the land occupied by a portion of the highway, owned the property described in the petition containing 10.17 acres, and that he still owns it subject to any rights that may have been acquired by the commission by the construction of the highway on the property in 1941 and the use of the highway by the public since that time.

The petitioners base their claim to the relief which they seek in this proceeding on substantially these grounds:

(1) The petitioner R. H. Dunn is the owner of the land taken by the commission in 1941, and, as such, is entitled to an award of compensation for the land taken and damages to the residue of his land; (2) the location of the highway upon the land and the use of the highway by the public since September 24, 1941, and the expenditure of public moneys and labor upon it, did not deprive the petitioner R. H. Dunn of his ownership of or his right to compensation for the land so occupied by the highway and damages to the residue of his land; (3) the representative of the commission, having told the petitioner R. H. Dunn, in 1941 that the commission in the construction of the highway would not take any of his land, and the petitioner, having relied upon that statement, and he and the commission not knowing of the encroachment of the highway on his land until more than ten years after the highway was opened to the use of the public in 1941, the petitioners are not barred of their right to maintain this proceeding by any statute of limitations; and (4) the provisions of Section 3, Article 1, Chapter 17, Code, 1931, are inapplicable but, if applicable, have not been complied with by the defendant.

On the contrary, the defendant contends, in substance, as a defense to this action, that (1) the title to the easement occupied by the highway at and prior to the institution of this proceeding was and is in the State of West Virginia and that such easement is not now owned by the petitioner R. H. Dunn; (2) the provisions of Section 3, Article 1, Chapter 17, Code, 1931, apply to the land occupied by the highway and have been fully complied with by the defendant; and (3) the right of the petitioners to maintain this proceeding is barred by Section 3, Article 1, Chapter 17, Code, 1931, and by Section 12, Article 2, Chapter 55, Code, 1931, as amended.

Section 3, Article 1, Chapter 17, Code, 1931, upon the operation of which the defendant chiefly relies, after defining the meaning and the effect of the words "road", "public road" and "highway" contains these provisions: "Any road shall be conclusively presumed to have been

established when it has been used by the public for a period of ten years or more, and public moneys or labor have been expended thereon, whether there be any record of its conveyance, dedication or appropriation to public use or not. In the absence of any other mark or record, the center of the traveled way shall be taken as the center of the road, and the right of way shall be designated therefrom an equal distance on each side, but a road may be constructed on any part of the located right of way when it is deemed advisable so to do: *Provided,* That a proper record of such right of way for a county-district road, showing the exact location thereof, shall be entered by the county court of the county in which such road is to be constructed; and that such a record of the right of way for a state road shall be made and entered as provided by section eight, article four of this chapter."

Section 8, Article 4, Chapter 17, Code, 1931, referred to in the foregoing quotation, was repealed and Section 7, Article 4, Chapter 40, Acts of the Legislature, 1933, Extraordinary Session, was enacted in lieu of Section 8. Section 7 is in these words: "The state road commissioner shall promptly file with the clerk of the county court of each county, all changes in titles to rights-of-way, maps, plats, surveys and all discontinuances of state roads within the county." As Section 8 has been repealed and as Section 7 has been incorporated in Chapter 17, the reference in the quoted provision of Section 3, Article 1, Chapter 17 to Section 8 will be regarded as relating to Section 7 of the present statute.

Section 12, Article 2, Chapter 55, Code, 1931, prior to its amendment by Chapter 2, Acts of the Legislature, 1949, Regular Session, provided that: "Every personal action for which no limitation is otherwise prescribed shall be brought within five years next after the right to bring the same shall have accrued, if it be for a matter of such nature that, in case a party die, it can be brought by or against his representative; and if it be for a matter not of such nature, shall be brought within one year next after the right to bring the same shall have accrued, and

not after." By the 1949 amendment the five year period was reduced to two years and, as to a right of action subject to the five year limitation which had accrued prior to the amendment, the limitation was fixed at two years after the amendment became effective or five years after the accrual of the right of action, whichever should be less. The statute, as it existed prior to the amendment, was in effect during the year 1941.

An important phase of this controversy relates to the conflicting claims of the petitioners and the State with respect to the rights of each in the strip of land now occupied by the highway which has been used by the public continuously for more than ten years prior to the institution of this proceeding. If the State, by the construction of the highway upon the land, by the use of the highway by the public for a period of more than ten years, and by the expenditure of public moneys and labor upon it, has acquired an easement over the land of the petitioner R. H. Dunn for the use of the public it would be futile to require the defendant, in the face of its ownership of the easement by the State, to institute a proceeding in eminent domain to subject the State to an award of compensation and damages in favor of the petitioners for an easement now owned by the State. Or, if the right of the petitioner R. H. Dunn to assert his claim of ownership to any such easement has been barred by limitations he could not recover compensation and damages in any such proceeding.

The question of the right of a claimant of land, occupied by the state road commission and used as a public highway, which is also claimed by the State, by mandamus to compel the state road commissioner to institute a proceeding in eminent domain to enable such claimant to obtain compensation for the land taken and damages to the residue of the land claimed by him, has been considered by this Court in *Stephenson* v. *Cavendish,* 134 W. Va. 361, 59 S. E. 2d 459, 19 A. L. R. 2d 720, and *Childers* v. *State Road Commissioner,* 124 W. Va. 233, 19 S. E. 611. In the *Stephenson* case the petitioners, claiming owner-

ship of land occupied by a public highway, showed a right to the land so occupied superior to the right claimed by the State and this Court, by writ of mandamus, required the state road commissioner to institute a proceeding in eminent domain against them for the purpose of awarding compensation for the land taken and used as a public highway and damages to the residue of the land. In the *Childers* case, the petitioners, likewise claiming ownership of land occupied by a public highway, failed to show a right to the land so used and occupied superior to the right claimed by the State. This Court reversed the judgment of the Circuit Court of Putnam County which awarded a writ of mandamus and by reversing that judgment refused a writ to compel the state road commissioner to institute a proceeding in eminent domain against the petitioners to enable them to obtain compensation for the land occupied by the highway and damages to the residue of the land which they claimed to own.

The petitioners insist that the statement of the unidentified engineer of the commission to the petitioner R. H. Dunn, during the progress of the work in 1941, that the commission "was not going to take" any of his property misled the petitioner R. H. Dunn, prevented him from making an investigation of the location of the boundary between the right of way and his land, and constituted a misrepresentation which tolled the statute of limitations. There is no merit in this contention. It is manifest that at the time the engineer made the statement he did not know or claim to know the true location of the boundary and that the petitioner R. H. Dunn, who had previously caused several iron pins to be placed along the boundary, was in a better position than the engineer to determine the exact location of the boundary. In fact the action of the commission in covering or removing the pins from the boundary line during the progress of the work, which Dr. Dunn admits occurred, was warning or notice to him at the time that the engineer was or might have been mistaken in his belief that the construction of the highway would not be placed on his land, and should have indicated

to him that the encroachment had occurred or would likely occur in the completion of the project. The engineer did not represent or attempt to represent that the boundary was located at any particular place and he did not conceal from the petitioner R. H. Dunn any knowledge or information which he might have possessed concerning the location of the boundary. The petitioner R. H. Dunn saw, or had ample opportunity to see, the progress of the work and the conditions that existed with respect to the location of the highway in relation to his land. He had the same opportunity as the engineer to investigate and determine, by survey or inspection, the actual location of the boundary. In those circumstances the petitioner R. H. Dunn was not justified in relying upon the statement of the engineer or, because of it, in failing to investigate the existing visible conditions to the extent necessary to locate the boundary line and to ascertain whether the construction of the highway would encroach or had encroached upon his land.

The location of the boundary between the right of way and the abutting land of the petitioner R. H. Dunn and the construction of the highway as located on the ground were open to his observation and investigation and, if he had displayed any interest or concern or had exercised any diligence, he could have readily ascertained the exact position of the boundary and the actual encroachment of the highway on his land at any time within ten years after the completion of the highway. He testified that he was "a busy man in 1940 and 1941" and "had no occasion" to "check" the extent of the work because the engineer told him that the commission "was not going to take" any of his property. His failure to make any effort to discover the actual situation in the clearly observable circumstances which continued to exist for more than ten years resulted from his own lack of concern or diligence and not from the statement to him by the unidentified engineer. That statement was merely an expression by the engineer of his belief or opinion that there was then no encroachment and a promise by him that the commission would

not encroach upon the land of the petitioner R. H. Dunn in the construction of the improvement. It did not mislead the petitioner R. H. Dunn, did not constitute a misrepresentation or amount to fraud, actual or constructive, and did not toll or suspend the operation of any applicable statute of limitations.

The cases of *Gall* v. *Cowell,* 118 W. Va. 263, 190 S. E. 130, and *Purcell* v. *Robertson,* 122 W. Va. 287, 8 S. E. 2d 881, cited by the petitioners in support of their contention that the statement of the engineer constituted a misrepresentation of fact upon which the petitioner R. H. Dunn relied to his detriment, do not apply to the established facts of this case. In the *Purcell* case releases, by a trustee of an estate, of two judgments in favor of the estate were obtained by false representations of one of the two judgment debtors and another interested person that the judgments were not collectible and the true financial condition of one of the judgment debtors was concealed and not made known to the trustee. Upon the facts in that case this Court held that the releases were obtained by misrepresentations which constituted constructive fraud and that the releases so obtained were subject to cancellation in a suit by the successor trustee. In the *Gall* case a director of a state bank in receivership purchased, by means of misrepresentation and concealment of material facts, certain indebtedness owed to the bank for a consideration which was less than the amount of the indebtedness. In a suit by the receiver to set aside the transaction, instituted after his discovery of the true factual situation, this Court held that the conduct of the director in procuring the purchase constituted constructive fraud and that the contract of purchase was subject to cancellation by the receiver. In the *Purcell* case the relation of the trustee to the estate was that of a fiduciary and that relation was known to the judgment debtor when the releases were executed and in the *Gall* case the relation of the purchaser, as a director of the bank, was also that of a fiduciary with respect to its stockholders and directors who were represented by the receiver. No such relation

existed between Dr. Dunn and the unidentified engineer at the time of their conversation or at any other time and, as already indicated, the statement of the engineer to Dr. Dunn did not constitute a misrepresentation of fact which caused him to take affirmative action and did not amount to constructive fraud. The facts in the *Purcell* and *Gall* cases are materially different from the facts here under consideration and, for that reason, those cases are readily distinguishable from the case at bar.

Despite the contention of the petitioners to the contrary, the provision of Section 3, Article 1, Chapter 17, Code, 1931, that "Any road shall be conclusively presumed to have been established when it has been used by the public for a period of ten years or more, and public moneys or labor have been expended thereon, whether there be any record of its conveyance, dedication or appropriation to public use or not.", applies to the undisputed material facts of this case and, as a ten year statute of limitations, bars the remedy of mandamus which was available to the petitioners but which was not invoked by them before the expiration of ten years after the highway was completed and devoted to the use of the public on September 24, 1941. Since that date the possession of the commission and the use by the public of that portion of the highway located on the land of the petitioner R. H. Dunn have been adverse to any claim or right of the petitioners to the easement so used. Though the exact location of the boundary was not known to the petitioner R. H. Dunn or the commission during the ten year period, a portion of the highway was actually and visibly located on his land and, regardless of the location of the boundary, it was clearly the intention of the commission to take, keep and claim, in behalf of the State, the portion of the land actually occupied and used by the public as a primary public highway of the State. In this respect this case is distinguishable from *Stephenson v. Cavendish,* 134 W. Va. 361, 59 S. E. 2d 459, 19 A. L. R. 2d 720, cited and relied upon by the petitioners.

In the *Stephenson* case, Van M. Stephenson, the holder

of a base or defeasible fee in certain lands, conveyed an easement for a county-district road in Nicholas County to the county court of that county which constructed a public road on the right of way. By statute, construction, maintenance, and control of the road passed to and devolved upon the state road commission on July 1, 1933. Upon the death of the grantor, the owner of the base fee, his estate in the land terminated and, within five years after his death, the owners of the land, who acquired title to it upon and by virtue of the termination of the base fee, filed their petition in mandamus in this Court to compel the state road commissioner to institute a proceeding in eminent domain to enable them to obtain compensation for the land occupied by the road and damages to the residue of the land. As the use of the road, under the deed from the owner of the base fee, was not adverse to the subsequent landowners until the termination of the base fee, and as the adverse use of the road between the termination of the base fee and the institution of the proceeding in mandamus was for a period of less than five years, the right of the new owners in and to the land to compensation and damages to the residue was not barred by the ten year limitation of Section 3, Article 1, Chapter 17, Code, 1931, or the five year limitation of Section 12, Article 2, Chapter 55, Code, 1931, which was in effect until the amendment of that section in 1949. In that case, with reference to those statutes, this Court said:

"Respondent's contention that the rights of way have been established by operation of law under the provisions of Code, 17-1-3, is not tenable in the circumstances of this case. That statutory provision would probably raise a conclusive presumption in a proper case that a road has been dedicated when used by the public for ten years or more, and public moneys have been expended thereon whether there is a formal dedication to the public use or not. A formal dedication by the petitioners is not here asserted or claimed. The application of Code, 17-1-3, depends upon the date petitioners acquired their estate in the land, which did not vest until the death of Van M. Stephenson.

Therefore, the ten-year period therein provided did not commence to run until that event took place. Furthermore, the public's use of the road prior to the death of Van M. Stephenson was not adverse to the rights of the petitioners. Of course, a road may be validly established by user, but the use must be adverse. See *Ryan* v. *County Court*, 86 W. Va. 40, 102 S. E. 731. The use of the road by the public did not become adverse to the petitioners' rights until the death of Van M. Stephenson. *McIlvain* v. *Porter*, (Ky.) 7 S. W. 309; *Mettler* v. *Miller* (Ill.), 22 N. E. 529.

"Respondent evidently relies upon the five-year statute of limitation reading in part as follows: 'Every personal action for which no limitation is otherwise prescribed shall be brought * * * within five years from the time such action accrued. * * *'. Code, 55-2-12, as amended. A right of action did not accrue to petitioners until Van M. Stephenson's death without surviving children. * * *. The cause of action having accrued within five years of the date of the institution of this proceeding, its prosecution is not barred by Code, 55-2-12."

Contrary to the contention of the petitioners, the previously quoted proviso at the end of Section 3, Article 1, Chapter 17, Code, 1931, does not apply to or affect the separate prior provision of Section 3 which creates a conclusive presumption of the establishment of a road when it has been used by the public for a period of ten years or more and public moneys or labor have been expended on it. Instead the proviso applies to the provision of the section which immediately follows the foregoing provision and immediately precedes the proviso itself and which is in these words: "In the absence of any other mark or record, the center of the traveled way shall be taken as the center of the road, and the right of way shall be designated therefrom an equal distance on each side, but a road may be constructed on any part of the located right of way when it is deemed advisable so to do;". If, however, the proviso should be considered as applicable to the conclusive presumption provision of Section 3, the requirement of the proviso has been fully complied with

as the evidence shows that a map of the section of the highway here involved was duly filed by the commission in the office of the clerk of the county court of Kanawha County. See *Wethered* v. *Conrad*, 73 W. Va. 551, 80 S. E. 953. Though filed of record, the map was not listed in any index and, for that reason, it was not found among the records in that office until more than one search for it had been made or until some delay in finding it had occurred.

The five year period of limitation, imposed by Section 12, Article 2, Chapter 55, Code, 1931, which was in effect on September 24, 1941, when the highway was opened to the use of the public and until that statute was amended in 1949, applied to a cause of action for damages to real estate. *Kinney* v. *Town of West Union*, 79 W. Va. 463, 91 S. E. 260; *Fleming* v. *The Baltimore and Ohio Railroad Company*, 51 W. Va. 54, 41 S. E. 168. More than five years have elapsed between September 24, 1941, and the institution of this proceeding and any claim of the petitioners for damages to the residue of the land of the petitioner R. H. Dunn has been barred by operation of that statute.

From the foregoing it is clear that the petitioners have not shown, in this proceeding, a claim to the land occupied by a portion of the highway superior to the claim of the State to an easement upon such land for use by the public as a primary state highway. In this respect this case closely resembles the case of *Childers* v. *State Road Commissioner*, 124 W. Va. 233, 19 S. E. 2d 611, a mandamus proceeding decided in 1942, in which this Court reversed the judgment of the circuit court, which awarded a writ of mandamus, and held, in point 2 of the syllabus that: "One claiming to be the owner of land, and who seeks, by mandamus, to compel the State Road Commissioner to institute a proceeding to condemn and ascertain compensation for the part thereof occupied by the State as a highway, under claim to an easement therein for highway purposes, must, in establishing a clear legal right to the relief sought, show a right in the occupied portion thereof superior to that of the State."

Though the facts in the *Childers* case are substantially different from the established facts in this case, the reasoning is directly applicable and the holding is controlling in this proceeding. In the opinion in that case this Court uses this pertinent language:

"Relators had a plain remedy to vindicate any rights they might choose to assert through injunction against the State Road Commissioner, or his representatives, from invading their property. *Stewart* v. *State Road Commission,* 117 W. Va. 352, 185 S. E. 567. If this remedy had been invoked, they would have been required to show title to the land affected. But they did not choose to pursue this remedy, but seek to compel the State Road Commissioner to institute condemnation proceedings to ascertain the compensation due them for the taking of property which the Commissioner contends belongs to the State of West Virginia. No such case has been heretofore presented to us. The cases we have considered have been of a character where title to the property was not in issue, and the question is, therefore, one of first impression in this State. Considering the question, we are of the opinion that the officials of the State are entitled to survey and locate the highway rights-of-way throughout the State, however acquired, and while they are not authorized, under the guise of locating rights-of-way, to take property of private citizens, some discretion is vested in them as to the institution of condemnation proceedings. The rights of property owners are not foreclosed when public authorities refuse to condemn property, which, according to their view, is owned by the State. If a property owner would contest their position in the matter, he may do so either by injunction, or by seeking a mandamus to compel condemnation proceedings, as has been done in this case. However, if he proceeds by way of mandamus, he must show a clear legal right to the relief sought. In other words, he must show a right to the land which he asks the State to condemn and pay for superior to that of the State. In the present case we do not think relators have shown a clear legal right to any compensa-

tion for the land in question, and, failing in this their petition should have been dismissed."

This Court has held in many cases that in mandamus the relator must show a clear legal right to the relief which he seeks. *Hockman* v. *The County Court of Tucker County,* 138 W. Va. 132, 75 S. E. 2d 82; *State ex rel. Conley* v. *Pennybacker,* 131 W. Va. 442, 48 S. E. 2d 9; *State ex rel. Koontz* v. *Board of Park Commissioners of City of Huntington,* 131 W. Va. 417, 47 S. E. 2d 689; *State ex rel. Goloversic* v. *Arnold,* 128 W. Va. 272, 36 S. E. 2d 209; *Childers* v. *State Road Commissioner,* 124 W. Va. 233, 19 S. E. 2d 611; *Ebbert* v. *Bouchelle,* 123 W. Va. 265, 14 S. E. 2d 614; *Brumfield* v. *Board of Education of Logan County,* 121 W. Va. 725, 6 S. E. 2d 238; *Rusinko* v. *Shipman,* 111 W. Va. 402, 162 S. E. 316; *Antonovich* v. *State Compensation Commissioner,* 110 W. Va. 273, 157 S. E. 591; *State ex rel. Woodyard Publications* v. *County Court of Hardy County,* 108 W. Va. 166, 150 S. E. 512. As the petitioners have not satisfied that necessary requirement in this proceeding, the writ prayed for in their petition is denied.

*Writ denied.*

LOVINS, JUDGE, dissenting:

I respectfully dissent from the Courts' conclusions in this proceeding.

I think that the relators are entitled to a writ of mandamus as hereinafter stated. The question presented in this proceeding is cognate to the question which was before this Court in the case of *State* v. *Bouchelle,* 137 W. Va. 572, 73 S. E. 2d 432.

In the *Bouchelle* case, the Circuit Court of Kanawha County was prohibited from requiring the state to amend its petition in a proceeding in eminent domain. The facts presented in the case of *State* v. *Bouchelle, supra,* disclose that there were three parcels of land adjacent to Federal Route 60, in the town of South Charleston and one of those tracts adjoined the boundary line of the road. A

proceeding in eminent domain was instituted by the state to condemn one parcel of land belonging to the relator lying to the south of the parcel involved in this proceeding. Another parcel of land concerned an easement owned by Harry and Argyle Staples.

The parcel of land which is the subject of this proceeding was designated as parcel number 1 in the dissenting opinion by the writer in *State* v. *Bouchelle, supra,* and will be so designated in this dissent. Parcel number 1 is an elongated tract of land about 6 feet wide and approximately 1000 feet long.

The Circuit Court of Kanawha County attempted to require the state to amend its petition in eminent domain to include parcel number 1. The petition in eminent domain formerly considered by this Court related to a tract of land lying immediately south of parcel number 1. As stated above, this Court prohibited the action of the Circuit Court of Kanawha County in requiring such amendment.

It is disclosed by the record in this case and in the proceeding in prohibition in the case of *State* v. *Bouchelle, supra,* that the State Road Commission in the year, 1941, improved Federal Route 60, then abutting on relators' land and encroached on their land to an approximate width of 6 feet, for a considerable distance. In the year, 1941, when the pavement was being widened and the encroachment took place, the relators were informed by some person who was apparently the engineer in charge of the work of improvement, that the state was not going to take any of their land. They relied upon that statement. No survey or other investigation was made until the State Road Commission sought to acquire additional land south of the 6 foot strip sometime in the year, 1951 or 1952, for the purpose of widening the highway at that point. The encroachment was then discovered. Whereupon, the relators sought to compel an amendment to the petition in eminent domain as above stated, with the result the Circuit Court of Kanawha County was

prohibited by this Court from requiring such amendment to be made.

As stated in the Courts' opinion, in the instant proceeding there is practically no dispute as to facts in this record. It is to be assumed, as a fact, that prior to the year, 1941, the relators owned the 6 foot strip of land, and that the State Road Commission, without paying compensation therefor, encroached upon the lands of the relators and have, since 1941, occupied the land for a public highway.

The writ in this proceeding is denied on the grounds that the state, through the Road Commission, has acquired the 6 foot strip of land by occupancy for a period of ten years or longer, and that under provisions of Code, 17-1-3, the right to an easement cannot now be questioned.

Though the title of the State Road Commission is really founded on a trespass, unknown to the relators, under Code, 17-1-3, the title to an easement for road purposes has been transferred to the Commission by virtue of the statute. But neither such transfer nor Code, 17-1-3 bars the right of relators to just compensation for their land so taken.

The Court denies the writ, based in part on Code, 55-2-12, as it existed prior to the amendment of 1949, holding that the right of relators to compensation has been barred by lapse of five years. This presents a difficult question. It is true that no demand was made for compensation for the 6 foot strip of land until approximately ten years after it had been occupied for road purposes. Ordinarily, a right to such compensation would be barred. See Code, 55-2-6.

A new phase of an incongruous situation is presented by this proceeding, which has existed in this jurisdiction for a number of years. This Court held in the case of *Mahone* v. *Road Commission*, 99 W. Va. 397, 129 S. E. 320, that the road commission is a governmental agency of the state, and as such, is not subject to an action for tort.

See *Davis* v. *Commission*, 113 W. Va. 110, 166 S. E. 819. Such holding posed a conflict in two constitutional provisions, which read in part as follows: "The State of West Virginia shall never be made defendant in any court of law or equity, \* \* \*". Section 35, Article VI, Constitution of West Virginia. "Private property shall not be taken or damaged for public use, without just compensation; \* \* \*". Section 9, Article III, Constitution of West Virginia.

The apparent conflict raised by the decision of this Court in the case of *Mahone* v. *Road Commission, supra,* and kindred cases, was resolved by authorizing a circuitous method for reaching an appropriate result by a proceeding in mandamus; for the purpose of requiring the State Road Commissioner to institute a proceeding in eminent domain. "Section 9, Article 3 of the Constitution which provides that 'Private property shall not be taken or damaged for public use, without just compensation', requires action on the part of the state, its sub-divisions or instrumentalities, to ascertain damages and compensate owners of property for the taking thereof or damage thereto, incident to any public improvement for which such property may be appropriated." *Hardy* v. *Simpson,* 118 W. Va. 440, 190 S. E. 680. See *Stewart* v. *Commission,* 117 W. Va. 352, 185 S. E. 567; *Riggs* v. *Commissioner,* 120 W. Va. 298, 197 S. E. 813.

This proceeding presents a conflict between Section 9, Article III, and the statutes of limitation. I think that Code, 17-1-3, is a statute of limitation or repose, but it does not in anywise bar the constitutional right of just compensation when private property is taken for public use. As stated above, the general statutes of limitation would probably be applicable and bar any right of the relators to recover compensation for their land taken, were it not for the provision of Code, 55-2-17, providing in part as follows: "Where any such right as is mentioned in this article shall accrue against a person \* \* \* if such person shall \* \* \* by any other indirect ways or means,

obstruct the prosecution of such right * * * the time that such obstruction may have continued shall not be computed as any part of the time within which the said right might or ought to have been prosecuted."

In my view, the assurance given in the year, 1941, by an engineer apparently in charge of the work to one of the relators that they did not expect to take any of relators' land, was such conduct as to prevent relators from making an investigation as to the true location of the boundary line between their land and the road right-of-way, and then asserting their rights, at, or shortly after, the time the encroachment took place. The statement of the engineer tolled the statute of limitation until the year, 1951-1952. Hence, the rights of the relators to compensation were not barred until the encroachment on their land was discovered.

Here, there was affirmative action or representation which conceals the existence of liability of the state to the relators, and so as to prevent or delay an action or proceeding to enforce their rights. The relators were prevented from making an investigation as to whether the State Road Commission encroached on their land in the year, 1941, by the active representation of the engineer apparently in charge of the work at that point. *Boyd* v. *Beebe*, 64 W. Va. 216, 61 S. E. 304.

This Court, in the case of *Baker* v. *Hendrix*, 126 W. Va. 37, 27 S. E. 2d 275, applied the provisions of Code, 55-2-17, to toll the statute, in an action against a defendant, who was a physician and had operated on the plaintiff, leaving a sponge or gauze in her body, and upon being questioned, actively concealed from the plaintiff the presence of the sponge in her body. The conduct of the defendant in that case was held to be such as to prevent the running of the statute of limitation. The phrase quoted in Code, 55-2-17: "* *.* by any other indirect ways or means, obstruct the prosecution of such right * * *", is emphasized in the opinion of this Court in *Baker* v. *Hendrix, supra*. In *Teter* v. *Moore*, 80 W. Va. 443, 93 S. E. 342, it was held

that the statute was tolled so as to allow the surcharging and falsifying of an accounting between partners, though the office of the complaining partner was in one of the rooms occupied by the partnership as an office where the accounts were made up and kept. *Cameron* v. *Cameron*, 111 W. Va. 375, 162 S. E. 173; *Abell* v. *Penn Mutual Life Ins. Co.*, 18 W. Va. 400.

A person's ignorance of his rights, without some affirmative action on the part of the person obstructing the enforcement thereof, is not sufficient to toll the statute. *Scott* v. *Rinehart & Dennis Co.*, 116 W. Va. 319, 180 S. E. 276. But in this proceeding, there was affirmative action on the part of the person ostensibly in charge of the work of widening the pavement. It is not necessary that relators stand guard over their property against an encroachment by a person supposedly honest. They had a right to rely on that representation, and did so rely. If an investigation is prevented by affirmative action on the part of the wrongdoer, the effect of the statute of limitation is suspended. *Smith* v. *Blachley* (Pa.) 47 A. 985.

For the time being, it may be conceded that there was no fraud, actual or constructive, practiced against the relators and growing out of the statement made by the supposed engineer, but it certainly can be said that the engineer, as well as the relators, made a mutual mistake as to the location of the property line between the road easement held by the State of West Virginia in the year, 1941, and the northern boundary line of relators' land. Such mistake certainly caused a delay in the enforcement of relators' rights which should not defeat the remedy sought in this case, the relator being ignorant of such mistake and without fault. *Craig* v. *Coal Land Co.*, 73 W. Va. 624, 80 S. E. 945. See *Coal Company* v. *Overholt*, 81 W. Va. 427, 94 S. E. 735; *Craufurd* v. *Smith* (Va.) 23 S. E. 235; *Grove* v. *Lemley* (Va.) 76 S. E. 305; *Senseny* v. *Boyd* (Va.) 76 S. E. 280; *Hall* v. *Graham* (Va.) 72 S. E. 105.

In the case of *Craufurd* v. *Smith, supra,* the Court uses the following language: "No lapse of time, no delay in bringing the suit, however long, will defeat the remedy in

cases of fraud or mutual mistake, provided the injured party during all this interval was ignorant of the fraud or mistake without fault on his part." The rule so announced in *Craufurd* v. *Smith, supra,* is adverted to in the body of the opinion in the case of *Craig* v. *Coal Land Co., supra,* where the following language is used: "The broad proposition asserted in *Craufurd* v. *Smith,* 93 Va. 623, 631, that no lapse of time or delay in bringing the suit, however long, will defeat the remedy in cases of fraud or mutual mistake, is not to be taken without its qualification, that the party must be without fault, negligence or lack of diligence."

The rule laid down in *Craufurd* v. *Smith, supra,* is implicitly approved, as modified, by the language quoted in *Craig* v. *Coal Land Co., supra.* In the instant case, the relators were lulled into the feeling of security without fault or negligence on their part. Their failure to investigate further shows no lack of diligence when the assurance given in 1941 by the engineer apparently in charge of the work is given consideration and weight.

The Court relies on the opinion of this Court in *Childers* v. *Road Commission,* 124 W. Va. 233, 19 S. E. 2d 611. The instant proceeding is to be distinguished from the *Childers* case. In the *Childers* case, the title to the land in question was in dispute. Here the state admits that the relators formerly owned the land, and fixes a definite event when the title was taken away from the relator by a lapse of time and the force of Code, 17-1-3. The *Childers* case lacked in certainty as to whether the relators in that case had any title to the land claimed by them. The opinion of this Court holds that title to the land claimed by relators had passed to the state by long occupancy and lapse of time. Here the state says to the relators: We started to occupy the land in 1941; you have permitted us to occupy it for more than ten years without attempting to enforce your right to just compensation. You are barred of any right to compensation, though an engineer then apparently in charge of the work represented to you that the state did not intend to take any of your land. It will not do

to say that the relators should have investigated. Why should they have gone to the expense of a survey and an investigation of their title when they had been informed by a person who should have known that there was no encroachment upon their land. No such representation had been made in the *Childers* case. I, therefore, do not think the *Childers* case is applicable to the instant proceeding.

The effect of the Courts' decision here is to deny a vital and most important right to the relators, guaranteed them by the constitution of this state. Such right is denied on the ground that it is barred by statutes of limitation.

I think that the right is so vital, so important, and so necessary in a well organized society that the constitutional provisions being paramount should prevail in the situation disclosed by this record. Therefore, I would grant a writ of mandamus as follows: Requiring the State Road Commission to institute a proceeding in eminent domain to ascertain the amount of just compensation due relators for the land the state took in 1941, as well as damages to the residue, if any.

A summation of the reasons for this dissent is as follows: (1) Code, 17-1-3, though operative and sufficient to transfer the title to an easement for a public highway, after a lapse of ten years, does not, either in letter or spirit, bar the recovery of just compensation for land taken or damaged, (2) the right to compensation is not barred by the general statute of limitation, for the reason that the statute of limitation is tolled by the act of the supposed engineer amounting to fraud, mutual mistake, or both, (3) the command of the constitutional provision, Section 9, Article III, is plain, paramount and imperative.

I would not require the State Road Commission to take the land itself, since it is now a public road. Though the land was formerly private property and has now been taken for public use, no compensation has been paid for it. The land is now owned, used and enjoyed by the

public generally, at the expense of the relators who have been deprived of their property.

The relators are told, in effect, that you have a right guaranteed by the Constitution and which has been taken away from you, but the Courts are closed to you by the statutes of limitation.

In other times and in other countries, it may have been that the sovereign could take the property of its citizens or subjects without compensation, but in this country, citizens are protected from such action, though performed by the sovereign. Therefore, I would grant the writ of mandamus as hereinabove indicated.